JOHN M. WHITE, Appellee, *vs.* REBECCA H. WHITE, Appellant.

*Opinion filed December 17, 1907.*

1. WITNESSES—*when complainant may testify to contract made with defendant's deceased husband.* Complainant in a bill in chancery to compel his mother to specifically perform an oral promise by his father and mother to convey to complainant land conveyed to the mother by the father shortly before his death is a competent witness in his own behalf to testify to the existence of the contract made with his father.

2. STATUTE OF FRAUDS—*when oral promise to convey land will be enforced.* An oral promise to convey land will be enforced in equity, notwithstanding the Statute of Frauds, where the evidence clearly shows the existence and terms of the agreement, and that the promisee took possession of the land, made valuable and lasting improvements thereon, paid the taxes, kept up the insurance and fully performed his agreement in all particulars.

APPEAL from the Circuit Court of Piatt county; the Hon. W. G. COCHRAN, Judge, presiding.

This is a bill in chancery brought by John M. White, Jr., against Rebecca H. White for the specific performance of an oral contract for the conveyance of a farm in Piatt county. The circuit court sustained the bill and entered a decree for a conveyance. Rebecca H. White has appealed to this court from that decree.

Prior to 1893 John M. White, Sr., father of appellee and husband of appellant, was the owner of the farm in question, consisting of about 175 acres, near Monticello, Illinois. He had three sons,—appellee, and Vincent I. and Benjamin R. White. Rebecca White held the title to another farm, consisting of 120 acres, on which appellee resided as a tenant. The ground upon which appellee claims that he is entitled to a conveyance of the 175-acre farm is, that in the year 1893 his father and mother promised him that if he would move on to the home farm and improve

it at his own expense, pay the taxes and pay his father $600
a year as long as he lived and pay his brother Ben $2500,
appellee should have the home place. The evidence shows
that appellee moved on to the home place in March, 1894;
that he paid his father $600 a year as long as his father
lived; that he paid all the taxes assessed against the land,
paid the fire insurance upon the buildings, and expended
something over $4000 in permanent and valuable improve-
ments upon the farm. On January 11, 1906, John M.
White, Sr., conveyed this home farm to his wife, Rebecca
White. Appellee had no knowledge of this conveyance un-
til a few days before his father died. The deed was re-
corded June 5, 1906, after the death of John M. White, Sr.,
which occurred May 27, 1906. On December 26, 1906,
appellant notified appellee that she would want possession
of the premises on March 1, 1907. This bill was filed in
January, 1907.

M. R. DAVIDSON, and JAMES L. HICKS, for appellant.

REED & REED, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Only three questions require consideration in this case:
(1) Was appellee a competent witness to testify in his own
behalf? (2) Was a contract made between appellee and
his father by which the father agreed that appellee was to
have the home farm? (3) If such agreement was made,
has the appellee shown such part performance thereof as
will take such contract out of the operation of the Statute
of Frauds?

*First*—It is contended by appellant that appellee was an
incompetent witness to testify to the existence of the con-
tract with his father, and the cases of *Cassel* v. *Cassel,* 104
Ill. 361, and *Wachter* v. *Blowney,* 104 id. 610, and other
subsequent cases in this court, are relied on in support of

this contention. The cases above cited, and others in line with them, are cases where the person against whom the party in interest testified were suing or defending in the capacity of heirs, legatees or devisees of the deceased person, and consequently the testimony of the party in interest was held incompetent under section 2 of chapter 51 of the Revised Statutes. This fact distinguishes the case at bar from the line of cases upon which the appellant relies and brings this case within the rule announced by this court in *Goelz* v. *Goelz,* 157 Ill. 33, *Gage* v. *Eddy,* 179 id. 492, and *Seaton* v. *Lee,* 221 id. 282. Appellee was a competent witness under the authority of the cases last above cited.

*Second*—Does the evidence show that a contract in fact existed? Appellee testifies to the contract with his father as set out in the bill, and he is corroborated by a large number of witnesses who testify to statements, in the nature of admissions, made by his father after the appellee went into possession of the farm, in 1894. John M. White, Sr., told many of his neighbors and friends that he had nothing to do with the home place; that it was to be appellee's at his death; that the only interest he had in it was to get $600 a year while he lived. He refused to insure the buildings or to list the property for taxation, and told the assessor to go to the appellee,—that the land was his. He referred Smith, the insurance agent, to his son to see about the insurance on the buildings, and refused to have anything to do with the place whatever. On one occasion, soon after appellee married, a number of friends assembled at appellee's house and brought presents there for appellee and his wife. Appellee's father was one of the guests on that occasion. He stated in the presence of the guests assembled that he had brought no present,—that the farm there was his present, which he had given to "Johnny" before that. Some of these statements were made by appellant, others were made by her husband in her presence. It appears to have been a very general and common understanding among

all the neighbors and friends of the parties that the home farm was to be appellee's and that the 120-acre farm was intended for Vincent, and that appellee was to pay Ben R. $2500 and Vincent was to pay him $1500. It is shown that in pursuance of this arrangement Vincent took possession of the 120-acre farm and appellee of the home place. Vincent obtained a deed for the 120 acres but no deed was ever made to appellee. The only evidence tending to contradict the foregoing facts is the testimony of appellant and a written contract of leasing dated October 3, 1889, between appellee and his father, which recited that John M. White, Sr., has leased the farm in question for one year from March, 1900, until March, 1901, for $600 and the payment of the taxes, and that appellee is to under-brush the bottom pasture and sow clover with all the small grain and cut the cockle-burrs off the land. The existence of this written lease is explained by appellee consistently with his contention as to the existence of the contract. He said at the time it was signed that his father told him it would not interfere with the verbal arrangement and that it was executed because that was his father's wish. Many of the statements and admissions of John M. White, Sr., above referred to, were made after the execution of this writing. In our opinion the evidence clearly shows the existence of a parol contract between appellee and his father, by which the father promised to give appellee the home farm on the conditions stated.

*Third*—Was there such part performance of this contract as to take it out of the operation of the Statute of Frauds? At the time appellee took possession of the farm in question it was run down and in a bad state of repair. Appellee has tiled the land, built a new cattle barn, a new corn-crib, put an addition to the residence, built substantial and permanent fences and made other valuable and lasting improvements, the aggregate value of which exceeds $4000. He has paid the taxes upon the farm, and is ready and will-

ing and offers to pay the $2500 to his brother Benjamin when he secures a title to the farm. We think that the agreement has been established with the clearness and satisfaction which is required in the case of a parol contract respecting land, and that the acts of part performance shown are sufficient to take the case out of the operation of the Statute of Frauds under the former decisions of this court. *Ramsey* v. *Liston,* 25 Ill. 114; *Bright* v. *Bright,* 41 id. 97; *Kurtz* v. *Hibner,* 55 id. 514; *Langston* v. *Bates,* 84 id. 524; *Bohannan* v. *Bohannan,* 96 id. 591; *McDowell* v. *Lucas,* 97 id. 489; *Smith* v. *Yocum,* 110 id. 142; *Fouts* v. *Roof,* 171 id. 568; *Clancy* v. *Flusky,* 187 id. 605.

The decree of the circuit court will be affirmed.

*Decree affirmed.*