VINCENT I. WHITE, Appellant, vs. REBECCA H. WHITE, Appellee.

*Opinion filed October 26, 1909.*

1. SPECIFIC PERFORMANCE—*proof required where agreement to convey is verbal.* To justify a decree of specific performance of a verbal contract to convey, alleged to have been made by a deceased person, the proof must clearly show that the contract was, in fact, made, and that the promisee, in pursuance of the contract, took possession of the land and made such valuable and lasting improvements as to take the case out of the Statute of Frauds.

2. SAME—*what proof is not sufficient to warrant decree.* Proof of declarations by a deceased person in which he spoke of a certain forty acres as belonging to his son, and proof of the building by the son of hog houses, fences and other improvements on the land, aggregating some $300 or $400, during the six years he was in possession, is not inconsistent with the defendant's claim that the son was merely given the use of the land for a hog lot for an indefinite time, and does not warrant a decree specifically enforcing the alleged oral agreement of the deceased person to convey the land to the son, who was the only witness who testified that such contract was made. (*White* v. *White,* 231 Ill. 298, distinguished.)

APPEAL from the Circuit Court of Piatt county; the Hon. W. G. COCHRAN, Judge, presiding.

REED & REED, for appellant.

HICKS & DOSS, and F. M. SHONKWILER, (C. F. MANSFIELD, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a bill in chancery filed by Vincent I. White against his mother, Rebecca H. White, to compel the specific performance of a parol contract alleged to have been made between complainant and his father, John M. White, Sr., in his lifetime, in which it is charged his father promised to convey to complainant the south-west quarter of the south-west quarter of section 11, township 19, range 6, in

Piatt county. The case was heard below on oral evidence submitted in open court and a decree rendered dismissing the bill for want of equity, to reverse which Vincent I. White has prosecuted this appeal.

In order to warrant a decree in appellant's favor it is indispensable that two propositions. shall be established by clear and satisfactory proof: First, that the contract was in fact made between the parties; second, that in pursuance of said contract, and in reliance thereon, appellant entered into possession and has made such valuable and lasting improvements as will take the case out of the Statute of Frauds. *Geer v. Goudy,* 174 Ill. 514.

To establish the existence of the contract, appellant testified on his own behalf that about the last of August, 1901, he was at his father's house, in Monticello, and that his father on that occasion told him that he would give him the forty acres of land in question; that his father said that appellant should go to the north-east corner of said forty and cut out a fence row and put a fence between this forty and another tract which his father owned on the north; that the reason stated by his father for giving appellant this land was that he was too old to build fences and look after it and that he had always intended that forty for appellant; that no one else was present at this conversation, unless his mother, the appellee, heard it, who was six or eight feet away from them, on the porch. J. M. White, Jr., testified that he had been in possession of the forty acres prior to 1901; that his father told him, in the fall of 1901, he had given that forty to appellant and that witness would have to give the land up to Vin and get along without it, and that Vin would build a fence separating this forty from the balance of the land. The evidence shows that the forty acres involved was timber land and uncleared; that the Sangamon river crossed it near the center; that the land was not considered of great value. W. W. Lemon testified that John M. White, Sr., told him

in the winter of 1902 or 1903 that he had given this forty acres to Vin, (meaning appellant,) and would make him a deed some time. John W. Mounts testified that he tried to buy some piling on this land from appellant's father; that he declined to sell it to him, saying the land belonged to Vin and he would have to see him. James Reed, tax collector, testified that John M. White, Sr., asked him if the boys had paid their taxes, and that he told him that they were all paid except on the river forty, meaning the forty acres involved in this suit; that John M. White, Sr., said that forty was Vin's, and if he could not pay the taxes upon it it could sell. John Heath, William Alexander, G. R. Dawson and H. C. White each testify to conversations they had with John M. White, Sr., in which he said, in effect, that he had given this forty acres of land to appellant.

On behalf of appellee, B. R. White, a brother of appellant, testifies that he was present in the latter part of August, 1901, and heard a conversation between his father and appellant in relation to this forty acres of timber land. He testifies that his father said to appellant, "Why don't you raise as fine hogs as Ben does?" Appellant replied, "I would if I had a place to keep them." His father then said, "You can have that forty acres of timber and fence off a hog lot; put in some good fences and have a hog lot down there." They then talked about the amount of work that would be necessary to clear it off and prepare it for a hog lot, and that the fence to be made was spoken of as "a hog-tight fence." He testifies that his father said nothing about giving Vin the land, but merely told him he could fence it off and use it as a hog lot and that he could cut the timber and make the rails and posts. He testifies that appellant was much pleased, and said that it would just suit him and he could make a good hog lot there. This witness also testifies that after the appellant took possession of the forty acres in question witness applied to his father to get some fence posts off this land, and that his father said to

go on and get as many posts as he wanted; that he made 300 posts on this land and hauled away 210 of them, when Vin objected to his taking the posts; that he told Vin his father gave him permission to get them; that he reported Vin's objections to his father, and his father said that Vin did not own the land; that he was just a renter there by permission, and that the only rent he paid was the taxes on it. It is also shown that John M. White, Sr., made a contract with the road commissioners by which he settled for $97 damages to this forty by making a public road on one side of it. Three witnesses testify that in November after the death of John M. White, Sr., which occurred in May, 1906, appellant went to Lafayette, Indiana, where his mother was visiting with her daughter, Mary D. Williams, for the purpose of renting this forty acres of land; that appellee wanted $120 a year but appellant thought that was too much; that appellant was willing to give her $40 a year, which he thought was enough in view of the improvements he had made on the place; that appellant finally gave his mother his note for $40 for the use of the forty acres for one year and agreed to do from $30 to $40 worth of work in the way of improving the land. It is shown that on January 11, 1906, John M. White, Sr., executed a deed conveying this forty acres of land to appellee. It also appears that appellant made an unsuccessful effort to rent the forty acres the second time from his mother, but, failing to agree, appellee rented the land to another person, but appellant refused to deliver the possession and was still in possession when this suit was commenced. One witness testifies that appellant said that if John White won his suit against his mother appellant was going to make a bluff and try to get pay for the improvements he had made on the river forty. This conversation is denied by appellant. The evidence shows that appellant took possession of the land in question, fenced it, cleared off twelve or fourteen acres and built two hog houses, estimated to be worth from $35 to

$50. The total value of all the improvements made by appellant during the six years that he had possession of the land is estimated at from $300 to $400, and in addition to this appellant paid the taxes on the land up to the year 1907.

The evidence as to a promise of John M. White, Sr., to give this land to appellant falls short of the legal requirements. No one testifies to the promise except the appellant. The statements of the several witnesses that John M. White, Sr., spoke of this land as belonging to appellant or referred to it as belonging to Vin are not necessarily inconsistent with the claim set up by appellee that her husband merely gave appellant permission to take possession of this forty acres and use it as a hog lot. The nature and value of the improvements put upon the land by appellant are such as one might reasonably be expected to make upon land of which he had the free use for an indefinite time.

Another son of John M. White, Sr., brought a similar bill against his mother to compel a conveyance to him of 175 acres near Monticello, Illinois. That case was brought to this court by appellee in this case. The decree granting John M. White, Jr., the prayer of his bill was affirmed by this court, and the case is reported as *White* v. *White*, 231 Ill. 298. That case is the one referred to by the witness Williams where he testified that appellant said, "If John wins his case I intend to make a bluff to get pay for the improvements put upon the river forty." The case at bar is readily distinguished in its facts from the former case. The court that tried this case heard the witnesses and had opportunities for determining their credibility which we do not enjoy. We are not prepared to say that the decree is so clearly against the weight of the evidence upon either branch of the case as to require a reversal.

The decree of the circuit court will therefore be affirmed.                                    *Decree affirmed.*