(No. 17902.—Decree affirmed.)
HARRY LONDON *et al.* Appellants, *vs.* CHARLES DOERING
*et al.* Appellees.

*Opinion filed April 20, 1927—Rehearing denied June 9, 1927.*

1. SPECIFIC PERFORMANCE—*court's discretion cannot be arbitrarily exercised.* While specific performance rests in the sound discretion of the court, the discretion must not be an arbitrary or capricious one but must be controlled by the settled principles of equity.

2. SAME—*when contract cannot be enforced because of uncertainty in terms.* Where a contract for the sale or exchange of real property shows on its face that it is a preliminary contract, to be followed within three days by a "regular real estate" contract, which was never executed, the preliminary contract cannot be specifically enforced where it does not state what kinds of deeds are to be made or when they are to be delivered, no cash is paid by either party, and where the amount of incumbrance is referred to "approximately" and the rate of interest, terms and conditions of the incumbrance are not stated.

3. SAME—*contract for conveyance must be certain in its terms.* A contract for the conveyance of real estate, to be specifically enforced in a court of equity, must be definite, and not so vague that details, which a court cannot supply, must be supplied or adopted before the contract will be complete.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

JACOB G. GROSSBERG, for appellants.

SHERMAN C. SPITZER, CHARLES F. GRIMES, ROSENBERG & ZIMMERMAN, COLLINS & McCULLOUGH, and MORRIS & MILLS, (H. J. ROSENBERG, and G. RAYMOND COLLINS, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The bill in this case was filed by Harry London and Leon Zimmerman, appellants, against Charles Doering, the Foreman Trust and Savings Bank, Lorvina Padorr, Joseph

Padorr and Isaac Mills, appellees, praying the specific performance of an alleged contract for the sale and conveyance of real estate. The contract set out in the bill was dated April 2, 1924, and is as follows:

"C. Doering, Chicago, Illinois, party of the first part, agrees to purchase.

"And Messrs. London & Zimmerman, Chicago, Illinois, parties of the second part, agree to sell.

"Property located at the S. E. corner Washington Blvd. and LeClair Ave., #5049-63 Washington Blvd.

"Lot improved with 36x4, 3x5, 18x3 and 6x2, with all improvements thereon. 1 basement flat (5 rooms).

"Price: $387,500.

"Subject to encumbrances mortgages approximately 290,000.00 with pre-payments thereon.

"The parties of the second part agree to accept from the parties of the first part in trade their 24 lots 600-ft. by 100 on W. 16th St., from the N. W. corner of Hamlin to the N. E. corner of Springfield.

"And 100x125 ft. on S. Hamlin Ave., N. of 16th St., as cash payment at price $145,000.

"Subject to a first mortgage of 78,000.00 pro-rated for two years.

"The balance after pro-rating rent, taxes, electric lights, gas, water, coal and interest in pro-rate of existing unpaid mortgages to be figured out between the two equities, and to be paid in cash at the time and date of delivery of deed.

"Both parties agree to deposit $ none each.

"Frank Waisman, broker, authorized to bring the two parties together for signing a regular Real Estate contract within three days."

Appellants' property is referred to in the record as the Washington boulevard property, and appellee Doering's property as the Sixteenth street property.

The facts are, that Frank Waisman, a real estate broker, brought appellants and appellee Doering together, and after examination of the respective properties appellants and Doering on the second day of April, 1924, entered into the contract above set out. That contract was delivered to Ernst Maysack to hold, and he wrote upon the face of it the words, "This contract held in escrow by

E. Maysack." Maysack was a salesman for the First Realty Company. The broker, Waisman, endeavored to get the parties together, as provided by the agreement of April 2, but did not succeed in doing so. There was listed with the First Realty Company for sale, property known as the Lake Park avenue property. Maysack appears to have spoken to Doering about that property. Doering examined the property and later entered into a contract for the exchange of his Sixteenth street property for the property referred to as the Lake Park avenue property. That contract is dated April 15 but it is claimed was actually signed April 17, 1924. At the time the contract was made the Foreman Trust and Savings Bank held the title to the Lake Park avenue property as trustee for the benefit of Abraham Weinberger and Joseph Padorr. The exchange of the Sixteenth street property of Doering for the Lake Park avenue property was subsequently carried out in compliance with the terms of the contract and deeds were delivered on the 25th day of April, 1924. The First Realty Company received a commission of $14,000 as broker in connection with the exchange of properties, and Maysack received one-half of said sum as his part of the commissions earned in the deal between Doering and Weinberger and Padorr.

On the 29th of April, 1924, appellant Harry London filed in the office of the recorder of deeds of Cook county an affidavit executed on that date, reciting that he and Doering, on the second day of April, 1924, entered into a contract for the exchange of properties, setting out the substance of the contract. The affidavit recites that London is ready, able and willing to carry out his agreement, but is informed and believes that Doering intends to disregard it and convey his property to other persons, and the affidavit was filed to give notice to all parties concerned of his rights under the contract. London also caused to be delivered to Padorr and Weinberger a letter dated April 29,

1924, stating that he had been informed they had entered into an agreement with Doering for the conveyance of the Sixteenth street property, and advising them that April 2, 1924, Doering entered into an agreement with London to convey to him the Sixteenth street property, and that London was ready, able and willing to carry out his agreement and would insist on doing so; that if the parties went further with Doering, or if they took title to the Doering property, it would be at their peril, as London would in the near future, if necessary, begin and prosecute a suit to enforce the contract with Doering.

Sol London and George J. London were part owners of the Washington boulevard property but did not sign the agreement sought to be enforced. May 12, 1924, Harry London and his wife, together with Sol London and his wife, George J. London, a bachelor, and Leon Zimmerman and his wife, executed their warranty deed to Doering for a consideration of $387,500, conveying and warranting to Doering the Washington boulevard property, subject to incumbrances not exceeding the amount of $290,000, and on the 19th day of May, 1924, delivered to Doering and the Foreman Trust and Savings Bank a written notice signed by Harry London and Zimmerman, with a copy of the contract of April 2, 1924, demanding conveyance to them in pursuance of that contract, and tendering them the warranty deed, signed and acknowledged, conveying the Washington boulevard property to Doering.

After answers were filed the cause was referred to the master in chancery to hear the evidence and report his conclusions. The master reported that all the material allegations in the bill, except those expressly referred to in the report, were sustained by the proofs; that the equities were with the complainants and against defendant Doering, but that none of the allegations of the bill against the other defendants had been sustained by the proofs, and that the bill was without equity against all defendants other than

Doering, and he recommended that the bill of complaint should be dismissed against all defendants except Doering. The master further found and reported that the question of damages arising out of the contract resulting through Doering's failure to carry out the terms of the agreement of April 2, 1924, had not been shown in the case, but in the event the pleadings were amended to make the question of damages, if any, an issue in the proceeding, the master recommended that the cause be re-referred to determine the damages, if any. Complainants did not seek to amend the pleadings to present the question of damages, and a decree was entered dismissing the bill for want of equity without prejudice to any rights complainants may have at law against Doering.

In our opinion it is necessary to discuss only one question involved in deciding the case.

Specific performance rests in the sound discretion of the court. The discretion is not an arbitrary or capricious one but is controlled by the settled rules and principles of equity. "To entitle a party to the specific performance of a contract it must be so certain and unambiguous in its terms and in all its parts as that the court can require the specific thing contracted to be done, [authorities,] and performance can only be decreed when the contract is clearly and satisfactorily proven. [Authorities.] So a contract not certain in its terms and not clearly and precisely proved will not be specifically enforced." *Koch* v. *National Union Building Ass'n,* 137 Ill. 497. See, also, *Barrett* v. *Geisinger,* 148 Ill. 98; *Brix* v. *Ott,* 101 id. 70.

The contract here sought to be specifically performed shows on its face that it was a preliminary contract in the negotiations for the exchange of properties and was to be followed within three days by a "regular real estate" contract. The only definite thing in the contract is an agreement that Doering will purchase the Washington boulevard property at a price named, and London and Zimmerman

325—38

agree to accept as part payment a conveyance of Doering's Sixteenth street property. Doering agreed to the consideration of $387,500 as the price of the Washington boulevard property, subject to incumbrances of approximately $290,000. Whether the incumbrances were already in existence or were to be placed upon the property before the conveyance, the rate of interest to be paid or the terms and conditions of the incumbrance were not stated. "Approximately 290,000" is not a statement of a definite amount but leaves the exact sum to future determination by the parties. London and Zimmerman agreed to accept in trade Doering's Sixteenth street property at a price of $145,000, subject to a mortgage for $78,000 pro-rated for two years, "the balance after pro-rating rent, taxes, electric lights, gas, water, coal and interest in pro-rate of existing unpaid mortgages to be figured out between the two equities, and to be paid in cash at the time and date of delivery of deed." No cash was paid, nor did the agreement state what kind of deeds were to be made or when they were to be delivered. In fact, it did not contain an agreement of the parties to deliver deeds; but that must be inferred, we think, from the language used. No cash was paid by either party, but Frank Waisman, a broker, was authorized to bring the parties together for the purpose of signing "a regular real estate contract" within three days. It appears to us no other understanding of the contract can be arrived at than that the parties were to come together again for the purpose of making a definite agreement as to the terms and conditions of the exchange of properties.

It is difficult to see how a court of equity can enforce the agreement of April 2, for so much was left to be determined in the future. A contract for the conveyance of real estate, to be specifically enforced in a court of equity, must be definite, and not so vague that details, which a court cannot supply, must be supplied or adopted before the contract will be complete. In *Tryce* v. *Dittus,* 199 Ill.

189, in considering a. bill for specific performance of a contract to convey real estate, the court said: "The agreement is indefinite as to when the indebtedness to be assumed by the defendant should become due. Nothing is said as to the terms and conditions of the mortgages or trust deeds. That was undoubtedly one of the things to be settled in the future. * * * The contract must be concluded,—*i. e.*, the persons must have 'agreed on the same terms and mutually signified their assent to them. If what passed between them was but treaty or negotiation, or an expectation of a contract, or an arrangement between them of an honorary nature, no specific performance can be had.' In *Woods* v. *Evans,* 113 Ill. 186, we said, on page 192: 'If the language employed leaves the intention of the parties who executed the contract in doubt, or if there is uncertainty in regard to what was intended, a court of equity will not undertake to decree a specific performance.' * * * 'It would be inequitable to carry a contract into effect where the court is left to ascertain the intentions of the parties by mere conjecture or guess, for it might be guilty of decreeing precisely what the parties never did intend or contemplate.' From what we have already said, it appears from the contract itself that in so far as the defendant agreed to assume incumbrances upon the land to be conveyed to him the agreement is indefinite and uncertain, and we think for that reason the court might, in the reasonable exercise of its discretion, have refused to grant the prayer of complainant's bill."

Pomeroy, in his work on Specific Performance, (6th ed. sec. 154,) says the general doctrine is that an agreement framed in general terms will be enforced where the law will supply the details but not where the details must be supplied by modes which the court cannot adopt; and in section 159 the author says: "An uncertain contract may, perhaps, embrace in a partial manner all the material terms, but on account of the inexact, indefinite or obscure language

in which one or more of them is stated it fails to express the intent of the parties with sufficient clearness to enable the court of equity to enforce its provisions. The specific performance of an agreement thus uncertain will not be decreed. * * * A greater amount or degree of certainty is required in the terms of an agreement which is to be specifically executed in equity, than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere non-performance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness."

We are of opinion the contract is not one which courts can order to be specifically performed, and the decree of the circuit court is affirmed.           *Decree affirmed.*