Maurice L. Cowen et al., Appellants, v. Raymond C. McNealy et al., Appellees.

Gen. No. 45,111.

Opinion filed December 5, 1950. Released for publication December 28, 1950.

WILHARTZ & HIRSCH, of Chicago, for appellants; SAMUEL E. HIRSCH, JACK A. DIAMOND and WARREN KRINSKY, all of Chicago, of counsel.

SOMMERS & SOMMERS, HORACE A. YOUNG and PAUL STICKLER, all of Chicago, for appellees; WERNER H.

Sommers and Horace A. Young, both of Chicago, of counsel.

Mr. Presiding Justice Schwartz delivered the opinion of the court.

Plaintiffs sue for the specific performance of an oral contract involving patents on pharmaceutical products owned by defendant Glassman. The contract rests entirely in parol and is set forth in five closely typewritten pages providing, among other things, for the organization by the individual plaintiffs of the plaintiff corporation, to which patents were to be assigned, the corporation to have 30 shares of common stock to be issued to plaintiffs, and 409.09 shares of preferred stock, no par value, non-voting and non-dividend, to be issued to defendant McNealy. The only incident of value in the preferred stock is its right to participate to the amount of 12 per cent in the event of liquidation or sale of the business. A motion to strike the original complaint having been sustained, certain amendments were made and a motion to strike the amended complaint was sustained, whereupon the action was dismissed and plaintiffs appeal.

The matter having been disposed of on the face of the complaint, we may assume that there was an oral contract between the parties. The very nature of the contract, however, and its complicated provisions make it appear that these were preliminary, tentative understandings looking toward the execution of a written, definitive contract. It appears that McNealy and Glassman were physicians associated in research leading to the discovery and the patents; that Glassman took out the patents and is alleged to be the owner thereof. He was to receive a royalty of 5 per cent. McNealy was to receive the preferred stock. It is stated upon information and belief that McNealy had an interest in the patents and in the royalties which it was contem-

181

plated would be derived from the agreement, and that Glassman was to have an interest in the shares of preferred stock. The contract does not so provide. The averment is pure conclusion, indefinite and uncertain. (*Grove v. Templin*, 320 Ill. 597, 602.)

■ ■ It is also stated that in the preparation of the contract, McNealy and Glassman acted as one party and the individual plaintiffs as one party. The contract, however, reveals that McNealy and Glassman did not act as one party. The compensation to be paid Glassman was separately stated, as was the compensation to be paid McNealy, and each was to render separate services. Under the terms of the agreement McNealy was to become a part-time medical research director, and Glassman was to render services as professional consultant. The 5 per cent royalty to be paid Glassman was to be based on "net gross" sales. "Net" and "gross" are words in deadly conflict with each other, but, say the plaintiffs, this can be explained by oral evidence of their customary usage in the trade. However that may be, they are not explained in the complaint and add another element of uncertainty to what should be explicit and certain, before equity will specifically enforce. Payment of royalty was to be discontinued in the event of a sale of the capital stock or a sale of all the assets, or on dissolution or liquidation. There is a provision as to what would happen in the event the patents were held invalid; a provision that the minimum royalty to be paid during the first three years should be $50,000, and the following two years, $50,000; that in the event of Glassman's failure to receive that minimum, and upon other contingencies therein stated, Glassman had the right to demand a reassignment to him of the letters patent; a provision covering prospects of patent litigation, assistance by McNealy and Glassman in such litigation, availability of records, data, research reports and investigations,

and warranties by McNealy and Glassman; and a provision that if the holders of the common stock received a bona fide offer for the purchase thereof and of the preferred stock issued to McNealy, McNealy would have the right to sell his stock on the basis of 12 per cent of the total purchase price offered for all the stock, and in the event he would not accept such payment, the individual plaintiffs would have the right to purchase his stock at a price to be determined on a formula set out in detail, with fractional percentages. All the foregoing is alleged to be an oral agreement of the parties.

 It would be no advantage to anyone purchasing the common stock to buy the preferred. The corporation could last forever and the preferred stock would not participate in the selection of directors or in profits. The defendants in support of their contention that the contract is unfair point out that immediately upon the assignment of the patents, the plaintiffs had the power to dissolve the corporation and become the owners of all but 12 per cent of the patents, whereupon the royalties would be discontinued and Glassman get nothing. In reply to this contention, the plaintiffs argue that while they were not obligated to spend any definite amount of money, they were by implication obligated to use reasonable business judgment in a bona fide effort to promote the products. Thus, plaintiffs themselves understand that one of the vital considerations for the contract was to be the exploitation by plaintiffs of the patented products and yet under its terms they are not required to spend any specific amount of money, to render any services, or to do any specific act of value in the sale of the products or the patents. The defendants' point in this respect is well made.

Plaintiffs offer to cause the corporation to enter into a royalty agreement with Glassman in accordance with the provisions of the oral agreement, *containing*

*such terms and provisions as may be directed by the court.* This indicates that the oral agreements set forth in the complaint were really provisional understandings arrived at in contemplation of a final written agreement, and the court is now asked to do what probably would have been done if the negotiations had been finally completed and embodied in a written agreement.

The reluctance of courts to grant specific performance of contracts was in part due to the difficulties of *in personam* direction of such performances. Here is a contract which clearly illustrates that difficulty. A court which would undertake specific performance of this contract could well become involved in a long and complicated administration of the affairs of the corporation and in a measure of control thereof wholly out of keeping with the character of the court's primary functions.

While specific performance is no longer as extraordinary a remedy as it once was, it is still a matter of sound discretion for the court. There are well established principles to guide this discretion. The contract must be definite, certain, complete and conclusive. *Davier v. Kaiser,* 280 Ill. 334, citing *Mould v. Rohm,* 274 Ill. 547; *Reynolds v. Wetzler,* 254 Ill. 607; *White v. White,* 241 Ill. 551; *Barker v. Hauberg,* 325 Ill. 538; *London v. Deering,* 325 Ill. 589; 49 Am. Jur., p. 17. With respect to an oral contract, it was said in *Davier v. Kaiser, supra,* that not only must proof of the oral contract be clear and conclusive, but "there must be no reasonable doubt that the contract was made." While this refers to the degree of proof, where the complaint itself shows that it cannot provide such support for its averments, the court is warranted in denying relief on the face of the complaint. It must be fair and just in all its terms. *1500 Sherman Ave. Bldg. Corp. v. Perkovic,* 255 Ill. App. 518; *Davier v.*

*Kaiser, supra; Edwards v. Brown,* 308 Ill. 350; *Stephens v. Clark,* 305 Ill. 408; *Grove v. Templin, supra.* One party should not have the power to discontinue it, to the disadvantage of the other. *Ulrey v. Keith,* 237 Ill. 284; *Southern Exp. Co. v. Western N. C. R. Co.,* 99 U. S. 191. It should be capable of reasonable enforcement as a whole, and where personal services are involved, the court may deny relief. *Ulrey v. Keith, supra; Barker v. Hauberg, supra.* It is in the light of the foregoing principles that we have examined the oral contract and found it wanting.

Defendants have also charged that the contract is in violation of the statute of frauds and of sec. 4 of the Uniform Sales Act [Ill. Rev. Stat. 1949, ch. 121½, par. 4; Jones Ill. Stats. Ann. 121.08]. We have not decided those questions, in view of our opinion that the oral agreement does not meet the more fundamental requisites for specific performance.

*Decree affirmed.*

FRIEND and SCANLAN, JJ., concur.