GRUNDY COUNTY NATIONAL BANK, Plaintiff-Appellee, *v.* MARSHALL MYRE, Defendant-Appellant.

Third District   No. 77-359

Opinion filed October 25, 1978.

George Mueller, of Hoffman & Mueller, of Ottawa, for appellant.

Robert White, of White and Marsh, of Ottawa, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Marshall Myre appeals from a judgment for $29,897.79 entered in favor of plaintiff Grundy County National Bank (hereinafter Bank) in a suit to collect certain accounts receivable which were assigned to the Bank by Ottawa Grain-Supply, Inc., a farm supply business now defunct.

This litigation is the unfortunate culmination of a 20-year business and social relationship between Marshall Myre, a farmer, and Jerry Schmanske, the manager of Ottawa Grain. Myre purchased nearly all of his fertilizer, chemicals, and other farm supplies from Schmanske on open account, and because of the size of his farming operation, Myre was Ottawa Grain's largest customer. In April of 1971, Ottawa Grain assigned its accounts receivable to plaintiff Bank, including Myre's $33,521.64 account. The Bank filed suit against Myre on May 22, 1972, to collect the amount due plus interest, and Myre filed an answer setting out an affirmative defense and a counterclaim. At the conclusion of the 1974 bench trial, the court entered judgment for $30,697.39 in favor of plaintiff, and on appeal we reversed that judgment because the trial court had refused to allow defendant to re-cross-examine Schmanske concerning defendant's account ledger after Schmanske had testified about part of the ledger on redirect. (*Grundy County National Bank v. Myre* (3d Dist. 1975), 34 Ill. App. 3d 287, 339 N.E.2d 348.) As a result, this cause was remanded for a new trial, at the conclusion of which the trial court found that on June 17, 1972, the parties settled the account for $29,897.79. Judgment was entered in favor of plaintiff for that amount plus five percent interest, and defendant again appeals.

Defendant first contends that the admission of evidence regarding the June 17, 1972, settlement negotiations was error because offers of compromise are inadmissible. According to the record, during cross-examination of Schmanske defendant elicited testimony about a series of meetings in June of 1972 where Schmanske and defendant prepared a list of defendant's fertilizer purchases showing the difference between the amount Ottawa Grain charged defendant for blended fertilizer and the amount defendant claimed he owed for straight fertilizer materials. The eight-page handwritten list was introduced into evidence by defendant. Plaintiff's next witness, Lowell Sandven, president of Ottawa Grain, testified over defendant's objection about these same meetings between Schmanske and defendant at which they tried to reach a price which defendant was willing to pay. Sandven also stated that the night before the June 17 meeting at the Bank, defendant shook hands and agreed to pay a sum certain (about $29,000), but the next day at the Bank, after first agreeing to have the Bank finance the amount due, he then backed out and refused to sign the financing papers which the Bank had prepared. William Palmer, the Bank president, also testified that defendant agreed on June 17, 1972, that he owed $29,879.79 and said he would sign a note and give the Bank a security agreement, but after the papers were drawn up, defendant refused to sign, and the meeting adjourned abruptly. This testimony was corroborated by Craig Johnson, assistant vice president of

the Bank and Frank Black, now an attorney, both of whom were also present on June 17, 1972.

■■ Defendant testified that he had refused to pay his account because he had been overcharged for his fertilizer purchases by $9,894.17, and that he shook hands with Sandven after Sandven agreed to reduce the account by that amount. The next day at the Bank, Palmer agreed to take defendant's note, but according to defendant, Palmer had the wrong figure on the papers. When Palmer said defendant would have to collect the difference from Ottawa Grain, defendant refused to sign and left. During trial defendant objected repeatedly to plaintiff's questions concerning the June 17 meeting at the Bank, but the trial court overruled those objections on the ground that defendant "opened the door" to testimony about the settlement when he introduced evidence of the previous negotiating sessions. We believe the ruling of the trial court was a proper exercise of its discretion. If the admission of the testimony was error, defendant invited the error by previously developing evidence about the negotiations. (*Armstrong v. Chicago & Western Indiana R.R.* (1932), 350 Ill. 426, 183 N.E. 478; *People v. Price* (3d Dist. 1976), 41 Ill. App. 3d 1059, 355 N.E.2d 732.) Since invited error is not reversible error, the evidence of the settlement agreement is properly a part of the record of this case.

Defendant next argues that the trial court should not have found that there was a settlement of account between the parties because plaintiff did not plead a cause of action based on a settlement until after defendant's post-trial motion had been denied. Then plaintiff filed a motion to amend the complaint to conform to the evidence. Defendant claims surprise since his defense was prepared to meet the original cause of action based on collecting an account.

■■ A trial court is authorized by section 46 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46(3)) to allow a pleading to be amended to conform the pleadings to the proof at any time before or after judgment, and a new theory of recovery may be added if that theory conforms to the proof. (*Sweeney v. Matthews* (1st Dist. 1968), 94 Ill. App. 2d 6, 236 N.E.2d 439, *aff'd on other grounds* (1970), 46 Ill. 2d 64, 264 N.E.2d 170.) After carefully reviewing the record, we cannot say that the trial court abused its discretion in allowing plaintiff to amend the complaint.

Defendant also asserts several factual issues which he insists should have been determined in his favor.

■■ First, he says the purported settlement, even if agreed to, should be ruled invalid as an unfair contract because he was outnumbered four to one at the June 17 meeting and because plaintiff's complaint to recover $37,000 might have misled defendant as to the principal sum due. Defendant suggests that he "was in no position to know" that plaintiff was

claiming $31,000 principal and the rest interest; therefore, defendant might believe that the $29,000 settlement represented a compromise of $8,000 on the principal. Defendant does not claim to have been actually misled or to have agreed under any sort of duress. Furthermore, before suit was filed defendant had received monthly statements of account from plaintiff that set out the principal sum due. His claims of unfairness or mistake are completely speculative and have no evidentiary basis in the record.

■ Second, defendant claims that the trial court erroneously treated as conclusive the evidence that he agreed to pay $29,897.79 without considering other evidence contradicting such an admission. As we have indicated the witnesses did give contradictory versions of the June 17 meeting which means that the trial court's determination turned upon the credibility of the witnesses and the weight to be given their testimony. A reviewing court should not disturb the findings of the trier of fact unless those findings are palpably erroneous and contrary to the manifest weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) Hence, we cannot say the trial court erred here.

■ Next defendant argues that the settlement agreement should not be enforced because he made a justifiable and unavoidable mistake of fact in that he did not, on June 17, 1972, know that he would later be forced to pay $18,500 to USS Agri-Chemical in proceedings to collect a note for certain 1970 fertilizer purchases. As will be explained in more detail below, defendant testified that he thought the $18,500 note had been satisfied by a "renewal note." However, defendant also testified that he had received notices that the note was due. Thus, while the suit to collect the note was not filed until after the June 17 settlement, defendant could have been aware of his $18,500 obligation before that date. Resolving this factual question was the function of the trial court, and we will not disturb its finding.

Defendant also contends that the trial court's rejection of his affirmative defense based upon the $18,500 note was contrary to the manifest weight of the evidence. According to the record, on July 23, 1970, at Schmanske's request, defendant signed a note for $18,500 payable to Ottawa Grain. The note was assigned to one of Ottawa Grain's major suppliers, USS Agri-Chemical, a division of United States Steel. The delivery receipt attached to the note listed the following commodities: "6—24—24 & Plowdown fertilizer, Anhydrous Ammonia & Nitrogen Solution." The form used was furnished to Ottawa Grain by U.S. Steel. Schmanske testified that he does not remember the transaction but that he thinks the note was in payment of commodities which defendant purchased in bulk directly from USS Agri-Chemical since no such purchase from Ottawa Grain appears on the invoices charged to

defendant's account or on the account ledger cards kept by Ottawa Grain. Sandven, the former president of Ottawa Grain, testified that the note reflected a transaction between defendant and USS Agri-Chemical for which Ottawa Grain received a commission and that such direct sales to large-scale customers was a common practice.

Defendant gave a different version of the transaction. He stated that Schmanske told him the note for $18,500 was necessary to reduce his open account balance which was about $19,000 at that time. The note was due on January 23, 1971, and in early January Schmanske brought him a "Feed Purchase Note," which he executed in the sum of $19,720, upon the representation that it was a renewal of the earlier note. The $19,720 note was shown as a credit on his account, and defendant stated that he thought the credit took care of the first note. His balance before the note was credited amounted to $30,448. Defendant denied making any direct purchases from USS Agri-Chemical and instead pointed to the invoices showing his numerous purchases of various fertilizers, chemicals and supplies from Ottawa Grain during the 1970 planting season which totaled about $19,000.

On June 21, 1972, U.S. Steel filed suit against defendant to collect the unpaid note plus interest and obtained judgment which defendant eventually paid. Now defendant argues that he is being forced to pay the $18,500 a second time since, according to him, the note was given for items charged to his account, but his account was never credited. We are, in effect, being called upon to reverse the trial court's determination of fact since this issue is primarily a matter of defendant's word against the word of Schmanske and Sandven. There is testimony that the $18,500 note was in payment of different purchases than those stated on account, and that evidence directly contradicts defendant's testimony.

A representative from U.S. Steel, Ed Rohrer, testified on defendant's behalf that U.S. Steel used notes from customers as a means of settling the dealers' accounts, thereby assuring U.S. Steel that a dealer's receivables would be paid directly to the supplier. Rohrer also stated that, to his knowledge, U.S.S. Agri-Chemical did not deal directly with customers in Illinois in 1970. This statement contradicted the earlier testimony of Sandven that direct sales were a common practice and that Ottawa Grain acted as a commission agent for this transaction.

Defendant, of course, had the burden of proving his affirmative defense, and we note the absence of any documentary evidence, such as his 1970 income tax return or his share-crop settlements with his landlords, which should have corroborated his testimony of an $18,500 overcharge. Although the evidence concerning the $18,500 note was disputed, it was sufficient to support the judgment for plaintiff.

Defendant further contends that his accounts were overstated by

$9,894 which is the total of the disputed items on the list prepared by Schmanske and defendant during their meetings in June of 1972. The trial court obviously rejected this argument. The testimony is fairly clear that defendant's claim as to these overcharges prompted the negotiating sessions, but neither Schmanske nor Sandven admitted overcharging. Instead the listing of the disputed purchases was for the purpose of obtaining a figure to use in negotiating a settlement. The fact that the settlement did not give defendant everything he wanted cannot be a basis for overruling the trial court. Again we think the evidence on this point supports the judgment of the trial court.

Defendant's final argument is that after the assignment of his account to plaintiff, of which he had notice, he paid $10,000 to Ottawa Grain on December 17, 1971, which he says was to apply to his debt to plaintiff. Plaintiff stipulated that $3,731.96 of the December 17, 1971, payment was credited by Ottawa Grain to the account assigned to the Bank and that the remainder was applied to purchases on account not assigned to the Bank. Defendant contends that the trial court erred when it failed to reduce plaintiff's claim by part or all of this sum, but we conclude that the evidence on this point is not so clear as to require a reversal. Defendant again asks us to reverse a factual determination made by the trial court who saw the witnesses and heard their testimony.

A court of review will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375.) Accordingly, we affirm the judgment of the Circuit Court of La Salle County.

Affirmed.

BARRY, P. J., and ALLOY, J., concur.