ROBERT W. COLGAN *et al.*, Plaintiffs-Appellants, *v.* PREMIER ELECTRICAL CONSTRUCTION COMPANY, Defendant-Appellee.

Third District    No. 79-925

Opinion filed January 7, 1981.

George F. Mahoney, III, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellants.

William Blumenthal, Patrick J. Mazza, and Walter K. Pyle, all of Patrick Mazza & Associates, P. C., of Chicago, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This action was commenced in the Circuit Court of Will County to collect monies allegedly owed to plaintiffs as third-party beneficiaries under a collectively bargained labor contract. After a bench trial, judgment was entered for the defendant. The plaintiffs prosecuted this appeal.

The labor contract at issue in this lawsuit involves the electrical contracting industry. Workers in that industry are represented by the International Brotherhood of Electrical Workers (hereinafter IBEW), a large nationwide union organization divided into local chapters that serve specific geographic areas. The employers of workers in the electrical trades hire labor from the local chapter which serves the geographical area of that employer's labor needs, and the terms of the labor contract between the employer and local chapter are specified in an inside agreement. The inside agreement is based upon a nationwide model agreement negotiated by the IBEW and the National Electrical Contractor's Association (hereinafter NECA). NECA is a trade association open to membership on a voluntary basis by employers of workers in the electrical trades.

In 1977, IBEW and NECA negotiated a new model contract to govern the wages, benefits, and other issues that were to prevail in the electrical contracting industry. Sometime early in 1977 the defendant, Premier Electrical Construction Company, an employer of electrical tradesmen in the Joliet, Illinois, area, learned that the new model agreement negotiated between NECA and IBEW would require employers, for the first time, to contribute an amount equivalent to one percent of its gross labor payroll to the National Electrical Industry Fund (hereinafter NEIF). The NEIF is a trust formed to pay contractor's costs for collective

bargaining, to enforce and administer collective bargaining agreements, to oversee fringe benefit programs, to promote technological research, to prepare electrical codes, and to promote the electrical industry. The defendant found this NEIF contribution provision objectionable, and before the model contract was incorporated in the regional inside agreement, it sent a letter on May 16, 1977, to Local 176 indicating that Premier would not contribute to the NEIF.

Later in 1977, the NECA/IBEW model contract became the basis for the inside agreement drafted by the Joliet Chapter of NECA and Local 176 of IBEW. Defendant received a preprinted form captioned "Letter of Assent—B" which it was to sign and return to Local 176, thereby indicating its acceptance of the 1977 inside agreement. Premier's agent, Michael S. Hughes, executed the agreement on June 29, 1977, in the following form:

> "This is to certify that the undersigned employer has examined a copy of the current approved Inside labor agreement between Joliet Chapter, National Electrical Contractors Association * * * and Local 176, International Brotherhood of Electrical Workers.
>
> The undersigned employer hereby agrees to comply with all of the terms and conditions of employment contained in the above-mentioned agreement and all approved amendments thereto. It is understood that the signing of this letter of assent shall be as binding on the undersigned employer as though he had signed the above referred to agreement including any approved amendments thereto.
>
> This letter of assent shall become effective for the undersigned employer on the 1st day of June, 1977, and shall remain in effect until the 31st day of May, 1978.
>
> If the undersigned employer does NOT intend to renew this assent he shall so notify the local union in writing at least 60 days prior to the termination date."

However, Mr. Hughes did more. To the preprinted letter of assent he attached his May 16 letter and a cover letter stating that Premier agreed to be bound by all the provisions of the labor agreement with the exception of the NEIF provision. Both letters, which were attached to the letter of assent, were subpoenaed for trial from the files of Local 176 and each was produced bearing the "received" date stamp of the Local with the same date as the letter of assent.

No negative response was received by defendant Premier to the counteroffer of its agent, Hughes, and it proceeded to carry out its contractual obligations to its union employees consistent with the terms of the counter-offer. The plaintiffs, trustees of the NEIF, believing that the de-

fendant was bound to make contributions to the NEIF by reason of its 1977 letter of assent, brought this suit as third-party beneficiaries under the inside agreement. The plaintiff-trustees sought the one percent contribution alleged due under the inside labor contract. The court below determined that under these facts, defendant's contract with Local 176 did not require contributions to the NEIF. The plaintiffs believe that decision was in error.

■■ The first question raised by plaintiffs involves the binding effect of admissions in a verified answer subsequently superceded by an amended answer. At issue is defendant's response to paragraph four of plaintiffs' complaint. That portion of the complaint appears as follows:

"4. That on or about the 29th day of June, 1977, the Defendant, PREMIER ELECTRICAL CONSTRUCTION COMPANY, a Corporation, executed a letter of assent which in part provided that the Defendant authorized the Joliet Chapter of the National Electrical Contractors Association, Inc. to act as its collective bargaining representative for all matters contained in or pertaining to the current approved Inside Labor Agreement between the Joliet Chapter of the National Electrical Contractors Association, Inc., and Local Union 176—International Brotherhood of Electrical Workers (Exhibit A); that such letter of assent was accepted, signed and approved in Will County, Illinois, has not been amended, modified or terminated and is in full force and effect; and that a true and exact copy of such letter is attached hereto marked Exhibit 'B' and by reference thereto specifically made a part hereof."

Defendant responded to the complaint with an answer verified by its officer:

"4. Defendant admits the allegations contained in paragraph 4."

Several months later, defendant was granted leave to file an amended answer, and in that pleading, also verified, paragraph four was expanded to read:

"4. Defendant admits that it executed the letter of assent attached as Exhibit 'B' to the Complaint on or about the date alleged; but Defendant denies that the letter of assent authorized anyone to act as collective bargaining representative for defendant (and alleges such fact as apparent from the face of the assent); admits that the letter of assent was accepted, signed and approved in Will County, Illinois; and admits that the letter of assent was not amended, modified or terminated by the Defendant's representative; but it denies that Exhibit 'B' constitutes the complete agreement as assented to by defendant and states that there was attached to said

letter of assent at the time of its transmittal to Local Union 176 for the Local's signature copies of two letters stating the defendant would not contribute 1% of its gross labor payroll to the National Industry Fund. Copies of said letter are attached hereto as Exhibit 'A' and by reference thereto, specifically made a part hereof."

Plaintiffs maintain that the first answer constitutes a judicial admission that the boilerplate letter of assent was not amended or modified. Further, they maintain that defendant is bound by its alleged admission and cannot rely on a contrary position.

In support for their position, plaintiffs cite several authorities, *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749; *Kilbane v. Collins* (1978), 56 Ill. App. 3d 707, 372 N.E.2d 415; *Zannis v. Lake Shore Radiologists, Ltd.* (1979), 73 Ill. App. 3d 901, 392 N.E.2d 126; and *Farwell Construction Company v. Ticktin* (1978), 59 Ill. App. 3d 954, 376 N.E.2d 621, cases whose holdings are accurately synthesized by the following passage:

> "* * * admissions in a verified pleading still bind the pleader after the filing of an amended pleading which supersedes the original pleading unless the amended pleading discloses that the admissions were made through mistake or inadvertence. [Citations.]"(*Burdin v. Jefferson Trust & Savings Bank* (1971), 133 Ill. App. 2d 703, 708, 369 N.E.2d 340, 344.)

The rule in *Burdin* is today unchanged and is consistent with the law followed in cases before and since. It does not, however, require a reversal of the judgment reached below.

■■ In its first answer, defendant admits that it accepted, signed and approved the boilerplate assent incorporated in the complaint filed by the plaintiffs-trustees. Further, it admits that the assent has not been amended, modified or terminated. It does not admit, because it is not alleged, that the boilerplate assent attached to the complaint constitutes all the written letters and memoranda which comprise the agreement of the parties. In fact, defendant's amended answer admits every allegation previously admitted and affirmatively asserts that the boilerplate letter does not contain the complete agreement of the parties. Thus, defendant sees no admission made in his first answer which is contradicted by his second.

Defendant's position is that the boilerplate assent was not amended or modified, and yet did not represent the entire agreement of the parties. While to some it may appear contradictory, we do not believe it frivolous to contend that a written agreement is not amended or modified by a subsequent writing but rather is explained or supplemented by it. (See, *e.g.*, Ill. Rev. Stat. 1979, ch. 26, par. 2—202, for this concept applied in context of a sales contract.) In short, when defendant urges us to find that

its amended answer does not contradict its first answer, it offers a rationale to harmonize the two which is not unfamiliar to the law. Now if defendant's position is correct, then no damaging admission exists in its original answer. If defendant's position is incorrect, then its amended answer clearly demonstrates the mistaken distinction upon which the original answer was premised. And where the amended pleading discloses that the admission was made through mistake, then the admission is not conclusive against the pleader. (*Burdin v. Jefferson Trust & Savings Bank.*) In either case, the judgment of the trial court is not disturbed.

After trial and entry of judgment in the instant case, the plaintiffs within 30 days after entry of the judgment filed a motion pursuant to section 46 of the Civil Practice Act for leave to amend their complaint by adding an additional count. The general theory of the additional count appears to be in *quantum meruit.* The trial court denied the motion, an action which the plaintiffs contend was reversible error.

■■ We note initially that the Civil Practice Act sets forth different standards to guide the trial court's discretion in allowing amendments to pleadings. One standard applies only to amendments before final judgment (Ill. Rev. Stat. 1979, ch. 110, par. 46(1)), while another relates to amendments after final judgment (Ill. Rev. Stat. 1979, ch. 110, par. 46(3)). By reason of these differing statutory sections, those authorities offered by plaintiffs which involve prejudgment amendments are negligibly persuasive. After judgment a pleading may be amended only to conform the pleadings to the proofs. (*Rotogravure Service, Inc. v. R. W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143.) A new theory of recovery may be added only if that theory conforms to the proofs. (*Grundy County National Bank v. Myre* (1978), 65 Ill. App. 3d 368, 381 N.E.2d 1204.) It is clear from our review of the record that this case was tried below on the theory of an express written contract. No evidence by way of testimony or otherwise was presented to support a recovery in *quantum meruit.* That being the case, the trial court properly denied plaintiffs' motion for leave to amend after judgment. *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 273 N.E.2d 403.

■■ We do not believe the judgment of the circuit court is unsupported by the evidence. Premier made its position regarding NEIF contributions clear to Local 176 even before it was asked to accept the 1977 inside agreement. That position was steadfastly maintained when Premier made what could be construed as a counteroffer on June 29, 1977. Local 176 accepted payments made pursuant to the written counteroffer. Acceptance of an offer need not be express or formal, but may be shown by words, conduct, or acquiescence indicating assent. (12 Ill. L. & Prac. *Contracts* §38 (1955).) We believe the record supports the judgment entered below for the defendant.

No error appearing in the record on appeal, the decision of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.