JOHN F. WOLLENSAK

*v.*

ORLANDO P. BRIGGS.

*Filed at Ottawa January 25, 1887.*

1. SPECIFIC PERFORMANCE—*where the party has put it out of his power to perform.* A decree for the specific performance of a contract is properly denied when it appears that the defendant has placed it beyond his power to specifically perform it, by sales and assignments to other parties who are not purchasers with notice of such contract, and who are not brought before the court.

2. CHANCERY—*bill for the discovery and surrender of property claimed under executory contract.* A court of equity can not entertain a bill for the discovery and surrender of property claimed under an executory contract which fails to give title to the complainant in the property to which it relates.

3. CONTRACT OF SALE—*whether the property in the thing passes.* In contracts of sale the rule is, when, by the agreement, the vendor is to do anything to the goods to put them into that state in which the purchaser is bound to accept them, the performance of that thing, in the absence of circumstances indicating a contrary intention, will be taken as a condition precedent to the vesting of the property.

4. So where a party agrees to make and deliver to another a novel machine for the manufacture of tin speaking tubes, etc., at a less cost than by the ordinary mode, for which final payment is to be made when the machine is completed and accepted, and should it prove a failure or not give satisfaction, a new one to be made that will be acceptable, no title to the machine will pass before its completion and delivery and acceptance.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Appellant exhibited his bill in equity, in the circuit court of Cook county, against the appellee, alleging therein, among other things, the execution and modification of certain contracts, marked, respectively, exhibits "A," "B," "C" and "D," as follows:

[Exhibit "A."]

"J. F. WOLLENSAK:

"*Dear Sir*—I propose to build, and deliver to your factory, and set up in complete running order, improved and special machinery, including shears and tools, for making 1 inch, $1\frac{1}{4}$ inch, $1\frac{1}{2}$-inch tin speaking-tube, the tube to be made in 30-inch, one length, so that two lengths may be joined to make usual 5-foot lengths, the seam to be single lock folding smooth and close, and be air-tight, and require no solder. One end of the tube will be enlarged so the lengths can be fitted together in the usual way. I intend the machine to be an improvement over those now in use, and that it will produce a first-class article, and do it rapidly, so as to reduce the cost of manufacturing as much as possible, and I will assign all the improvements in the machine to you, if you see fit to cover them by patents right, and I agree to give it to you within ninety days from date, and in consideration of the foregoing you are to pay the sum of eight hundred dollars, ($800) when all is complete and approved by you. I will also investigate for you the best method of finishing door and other lock keys, and will give you my ideas as to which is the best kind of machinery or tools for the purpose, so that you can modify machinery you now have, or may want to make, for this purpose.                    O. P. BRIGGS.

CHICAGO, *August 8, 1884.*

"Accepted.—J. F. WOLLENSAK."

[Exhibit "B."]

"CHICAGO, *March 9, 1885.*

"J. F. WOLLENSAK—I propose to build and deliver to your factory, set up in complete running order, improved and special machine, complete in all its parts, for making 1 inch, $1\frac{1}{4}$ inches, and $1\frac{1}{2}$ inch round speaking-tube elbows, of one piece, without the use of solder, the elbows to have the usual large end and small end, so as to fit into and over the speaking-tube for which I am now building machines for. The machine will be a first-class and durable article, and designed to make a superior elbow, and do it rapidly and cheaply, so as to enable you to compete successfully with any now in market.

"I also agree to sign over to you any claim I may have for improvements on the machine, and assist you in procuring a patent for it, should you desire to secure a patent.

"I also agree to deliver the machine, and have it in complete running order in your factory, in thirty days from date, and in consideration of the foregoing you are to pay me the sum of six hundred dollars ($600.)

"You are to advance me, on signing this agreement, two hundred and fifty ($250) dollars, and two hundred ($200) dollars more, in two payments of one hundred ($100) each, while the machine is being built,—this amount to apply on account, and the balance, viz., one hundred and fifty ($150) dollars to be paid me when you have finally accepted the machine, and are entirely satisfied with it. Should the machine prove a failure, or not meet with your approval, I propose to construct another which will. In that event I should, of course, require the time of delivery extended sufficiently to enable me to make necessary modifications.

"It is understood that the assignment of the machine above mentioned, when patent is applied for, shall be an assignment to you in the patent of an exclusive and undivided right in the United States for making speaking-tube elbows, and that I

reserve the right to use the machine or patent for making stem-pipe elbows,—the idea being to limit your claim in the patent to the right for making speaking-tube elbows, and that anything I might do farther with the patent shall be subject to the assignment to you, and your right in this business shall also be protected in any subsequent improvements I might make in this kind of machine.　　　　　O. P. BRIGGS.

　　　　　"Accepted.—J. F. WOLLENSAK."

[Exhibit "C."].

"*No. 1088 W. Monroe, 38,547:*

　"This contract is modified so as to make the contract price nine hundred dollars ($900), instead of eight hundred ($800), and the delivery April 10, 1885.

　　　　　　　　　　　　　J. F. WOLLENSAK,
"*March 9, 1885.*　　　　　　　O. P. BRIGGS."

[Exhibit "D."]

"This agreement is further modified, so that when a patent on the machine mentioned within is applied for, the patent shall be assigned to J. F. Wollensak, for the exclusive and undivided right in the United States for making speaking-tubes; that O. P. Briggs reserves the right in the machine for making stove-pipe and other articles, the idea being to limit Wollensak's claim in the machine to the manufacture of speaking-tube, and that any assignment or disposition of the machine or patent shall be subject to Wollensak's claim, viz., that he alone shall have the use of the machine or patent for making speaking-tubes. This agreement also covers any subsequent improvement by Briggs in this kind of machine.

　　　　　　　　　　　　　J. F. WOLLENSAK,
"*March 12, 1885.*　　　　　　O. P. BRIGGS."

It was further alleged, "that the first of said machines, being intended for the purpose of manufacturing speaking-tubes more rapidly and economically than then had been pre-

viously done, and the second for making the elbows thereof in one operation, from a straight piece of tin-tubing, and without the use of solder, said machines were and are considered of great importance and value to your orator, and that because of this fact your orator was and is especially anxious to procure the same for use in his said business; that after the making of said contract, (Exhibit 'A,') the said defendant partially built one machine of the kind therein referred to, bringing the same almost to the point of full completion, which he tried and experimented with, but afterwards pronounced a failure; that the said defendant then, or about that time, showed and explained to your orator new drawings, which he said he had prepared, and according to which he then proposed to build another machine in place of the one first built and tried, as aforesaid, and that your orator was so impressed therewith, and so desirous of procuring and having said machine, that he thereupon, and as a further consideration therefor, agreed to pay the said defendant the sum of $100 additional to the price mentioned and specified in said first agreement, (Exhibit 'A,') and also as a part of the same transaction, and simultaneously therewith, entered into said agreement in reference to the building of said other machine, (Exhibit 'B;') that the said defendant afterwards began work on said second machine, which was to be built in accordance with said new drawings, as aforesaid, and after bringing it almost to the point of completion, invited your orator over to his workshop to see the same operated, it being then substantially finished so as to make one size of speaking-tube, and, in fact, almost entirely finished in every respect, except as to the gearing attachments and a few small features or details of construction; that after the making of said agreement, (Exhibit 'B,') the said defendant also began work on said machine for making elbow joints, and substantially completed the same, but that it was never delivered to your orator, or in any way put into actual use or work, so far

as he knows; that after building said machines as above mentioned, but before delivering them, or either of them, to your orator, said defendant informed your orator that he had been put to greater expenses than originally contemplated or expected, and therefore suggested and insisted that your orator should pay him a larger sum for said machines than specified in said agreements; that in view of these facts, and because of his anxiety to get said machines, your orator then expressed his willingness to pay the said defendant a much larger sum therefor than he was under any obligations to pay, and that your orator has in fact, at various times, paid the said defendant, in all, the sum of $1200 on account of said machines; that afterwards, and after your orator had expressed his willingness to pay the said defendant a greatly increased price for said machines, and had in fact paid him the sum of $1200 on account thereof, the said defendant declined and refused to deliver said machines, or either of them, to your orator, or to execute and deliver to him any assignment or license in reference to said inventions or improvements, in accordance with the terms and conditions of said agreements, but that instead thereof, he, the said defendant, as your orator believes, delivered both machines to other parties, and promised and agreed to assign and transfer to them, or did actually attempt to transfer and assign to them, the interest in said inventions and improvements which he had previously agreed to transfer to your orator, and that, although often requested so to do, he has refused, and still refuses, to deliver said machines, or others like them, to your orator, or to assign and transfer to him said interest in said inventions and improvements agreed to be assigned as aforesaid; that, as your orator is informed and believes, the said defendant, combining and confederating with others, is now seeking and endeavoring to cheat and defraud your orator out of the said money paid to him for said machines and said rights and privileges agreed to be assigned to your orator, as aforesaid, and, generally, that the said

actings and doings of the said defendant are calculated and intended to work great and irreparable loss and injury to your orator in his said business of manufacturing and selling speaking-tubes, as aforesaid; that, as your orator believes, the said defendant, in pursuance of his intentions to cheat and defraud your orator in the premises, has agreed to sell and assign, or actually attempted to sell and assign, said inventions and improvements to others, and at the instance or for the benefit of others has made, or intends to make, application for letters patent therefor, but that, applications for patents pending in the patent office being secret, your orator has no means of knowing or ascertaining all the actual facts in this respect, or obtaining copies of such application or applications, if filed, and that all the facts in this respect being peculiarly within the knowledge of the said defendant, it is necessary for your orator to have a discovery and disclosure from him as to whether he has filed any such application or applications, and if so, the status thereof, and what proceedings have been taken therein; that said machines are of such peculiar kind and construction that your orator can not build the same, or have them built by others, and, as your orator is informed and believes, their construction and operation involve the use of said inventions and improvements, which, so far as your orator knows, have never been described or explained to others, so as to enable them to manufacture or use the same; that the defendant has never delivered to your orator any specification or drawings of said machines, or otherwise explained their construction and operation, so as to enable your orator to build or use the same, or in any way to utilize and enjoy the exclusive rights and privileges agreed to be assigned to him, and which, if capable of being used as intended and represented, would be of great value to him in his business, as aforesaid, and that in order to enable your orator to have similar machines built, or in any way to use or utilize said inventions and improvements, it is necessary for him to have

drawings, specifications or explanations thereof, and for this purpose to have a further discovery and disclosure from the said defendant, showing the exact construction and manner of operation of said machines, and such other facts as may be necessary to enable your orator to have them built and put into operation in his said business of manufacturing and selling speaking-tubes, as aforesaid."

And afterwards the following additional allegations were filed, as an amendment to the bill: "Your orator shows and represents unto your Honors, that the said defendant, while engaged in building the machines for your orator, referred to in the contracts mentioned herein, at various times exhibited to your orator drawings of said machines, which your orator understood when the same were before him, and in accordance with which the said defendant was building said machines; that your orator approved of and was satisfied with the machines which were described and shown in such drawings, and which defendant was building for him, as aforesaid, and repeatedly told the defendant so, and at the time the defendant exhibited the second machine to him, practically completed, except some gearing and other slight details of construction, your orator informed the defendant that he was satisfied with such machine, and approved of and was ready to accept and pay for the same, and at various times your orator has so expressed himself to the said defendant; that your orator is able to build the machines mentioned in the contracts declared on here, if he can have the drawings of the same which were exhibited to him from time to time by the said defendant, before him for examination and inspection, or copies of the same, and is ready and willing, and hereby offers, to build such machines himself, if the defendant will permit him to inspect and examine said drawings; that he has so expressed himself to the defendant at various times, and has requested him to permit an examination and inspection of such drawings, but the defendant has always

refused to permit such inspection and examination on the part of your orator, or others for him, and now refuses to permit your orator such privilege; that your orator is informed, and believes, that said defendant is wholly irresponsible and insolvent, financially; that your orator has made inquiry and examination, and has been unable to learn that defendant has any property in his own name that could be reached by execution, except a small quantity of stock in a stock company, which your orator is unable to ascertain has any salable value whatever, and that, in the belief of your orator, any judgment against the defendant would be unavailable and uncollectible, and would afford your orator no sufficient or adequate remedy whatever in the premises; that your orator has, at all times and in all respects, faithfully carried out and performed all said agreements on his part, and is now ready and willing, and hereby offers, to perform and do everything on his part required by said contracts, or either or any of them, or which he ought, in equity and good conscience, to do in the premises; that your orator is without remedy in the premises, save in a court of equity, where matters of this nature are properly cognizable."

The prayer then proceeds: "To the end, therefore, that the said defendant, Orlando P. Briggs, may answer the premises, (but not under oath, an answer under oath being hereby expressly waived,) that the said defendant may be decreed to carry out and specifically perform all and singular said agreements on his part; that he may be required to build, and deliver to your orator, machines of the kind and for the purpose aforesaid, and containing the inventions and improvements aforesaid, according to the letter and spirit of said agreements; that if he has not already made such applications, he may be required to make application for letters patent for said inventions and improvements, and to assign to your orator the rights and privileges therein, which he is entitled to under said agreements; that if unable so to build and de-

liver said machines, he may be required to make and deliver to your orator full and complete drawings, specifications and explanations thereof, so as to enable your orator to build the same, or have the same built elsewhere; that he may also be required to disclose and discover whether he has made any application or applications for lettters patent on said inventions or improvements, or either of them, and if so, the status thereof, and, generally, what proceedings have been taken therein; that he may be required to show and exhibit to your orator, or to mechanical experts or draughtsmen on behalf of your orator, the said drawings of the machines mentioned in the contract declared on herein, which he has already made and prepared, and on several occasions showed to your orator while engaged in building said machines, and that he permit your orator, or others for him, to examine such drawings, and to make copies of the same for the use of your orator in building such machines himself; that he may also be enjoined, as well preliminarily and provisionally as perpetually, from assigning to any other person or persons the rights and privileges in said inventions and improvements agreed to be assigned to your orator, as aforesaid, or from in any way incumbering the same, or seeking to hinder or embarrass your orator in the full or free use and enjoyment thereof; that he may also be decreed to pay over to your orator all the damages which your orator has sustained by reason of his failure to carry out and perform said agreements on his part; and that your orator may have such other and further relief in the premises as may be agreeable to equity and good conscience, and as to your Honors shall seem meet. May it please your Honors to grant unto your orator the People's writ of summons, issued out of and under the seal of this honorable court, directed to the said defendant, Orlando P. Briggs, commanding him, by a certain day and under a certain penalty, to be and appear in this honorable court, then and there to answer the premises, and to stand to and abide

by such order and decrees as may be made against him; and also the writ of injunction, as well preliminary and provisional as perpetual, issuing out of and under the seal of this honorable court, enjoining and restraining the said defendant, Orlando P. Briggs, his agents, attorneys, servants and workmen, as is heretofore in that behalf prayed."

The circuit court sustained a demurrer to the bill, and that judgment was affirmed, on appeal, in the Appellate Court.

Messrs. BANNING & BANNING, for the appellant:

If this bill can not be maintained as one for the specific performance, the court may grant the other relief sought,— a discovery that may enable appellant to avail of his rights under the contracts.

The information asked can readily be furnished by the production of drawings or copies of patent applications, or, in other words, by the production of documents. As to the power of courts in this respect, see *Maden* v. *Veevers*, 7 Beav. 542; *Davis* v. *Dysart*, 20 id. 405; *Pennell* v. *Dysart*, 27 id. 542; *Greenwood* v. *Greenwood*, 6 W. R. 119; *Lord Brougham* v. *Convin*, 16 id. 688; *Bishop of Winchester* v. *Bowker*, 29 Beav. 481; *Lambert* v. *Rogers*, 2 Mer. 490; *Thorpe* v. *Holdsworth*, 7 L. R. 147; Cooper's Eq. Pl. 59; Bray on Discovery, 276-279; Copinger on Title Deeds, 54.

These authorities certainly sustain the proposition, that in ordinary cases a party interested in property is entitled to a discovery of what the property is, and it has always been recognized that this form of relief is especially applicable in patent causes. *Colgate* v. *Compagnie Francaise du Telegraphe de Paris a New York*, 23 Fed. Rep. 85,—citing *Vidi* v. *Smith*, 3 El. & Bl. 969; *Morgan* v. *Seward*, 1 Webst. Pat. Cas. 169; *Russel* v. *Cowley*, id. 458; *Shaw* v. *Bank of England*, 22 L. J. Exch. 26.

Assignments of inchoate rights, or of improvements to be made, and agreements to assign interests in patents when

obtained, are constantly recognized and upheld by the courts. *Gayler* v. *Wilder*, 10 How. 492; *Railroad Co.* v. *Trimble*, 10 Wall. 379.

Mr. JESSE Cox, for the appellee:

The writings sought to be enforced are not contracts. The completion of the machine, and its acceptance, were necessary to make the offer a binding contract. *McKinley* v. *Watkins*, 13 Ill. 142; *Olney* v. *Howe*, 89 id. 556; *Bickford* v. *Davis*, 11 Fed. Rep. 549; *Hester* v. *McNeille*, 6 Phil. 234; *Manby* v. *Life Ass. Society*, 29 Beav. 439; *Brace* v. *Wehnert*, 25 id. 348.

The alleged contracts not being binding on Wollensak, were, therefore, not binding on Briggs. By a well established rule, specific performance can not be decreed on such propositions. And it is certain that no bill for specific performance would lie against appellant to compel him to approve the machines which Briggs had so indefinitely agreed to invent. *Marble Co.* v. *Ripley*, 10 Wall. 339; *Richmond* v. *Railroad Co.* 33 Iowa, 486; *Bickford* v. *Davis*, 11 Fed. Rep. 549; *Sutherland* v. *Parkins*, 75 Ill. 338; *Brace* v. *Wehnert*, 25 Beav. 348; *Palace Car Co.* v. *Railroad Co.* 11 Fed. Rep. 625.

A contract providing for personal services which require mechanical skill, etc., will not be specifically enforced; nor will the courts enjoin the performance of the same services for others. *Baldwin* v. *Society*, 9 Sim. 393; *Clark* v. *Price*, 2 Wils. Ch..157; *Kimberly* v. *Jennings*, 6 Sim. 340; *Kemble* v. *Kean*, id. 334; *Hambleton* v. *Dinneford*, 2 Edw. Ch. 528; *Richmond* v. *Railroad Co.* 33 Iowa, 486.

The fact that appellee has put it out of his power to perform, is always an answer to the bill for specific performance. *Bickford* v. *Davis*, 11 Fed. Rep. 549; *Woodward* v. *Harris*, 2 Barb. 439; *Maulden* v. *Armistead*, 18 Ala. 500.

As to the prayer for the inspection of the applications and drawings, it is not alleged that application for a patent was

ever made, or, if so, that the drawings, etc., are now in defendant's possession.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The opinion of the Appellate Court in this case, by BAILEY, J., shows, quite satisfactorily, that this bill can not be maintained as a bill for the specific performance of a contract. Counsel for appellant, however, virtually conceding this, contend that the bill is not to be regarded as a bill for the specific performance of a contract, but as a bill for the discovery and surrender of property. The correctness of this position depends upon whether the contracts and modifications set out in the bill give title to appellant in the property to which they relate, before delivery by appellee, and acceptance by appellant. We are clear in the opinion that they do not. The proposition in both contracts is in substantially the same language. It is: "I propose to build, and deliver to your factory, and set up in complete running order, improved and special machinery," etc. In both, final payment is to be made when the machine is completed, and approved by appellant. It is true, that in the second contract it is provided that $250 is to be paid by appellant at the time of signing the contract, and $200 more is to be paid, in two payments, of $100 each, while the machine is being built; but that this is not intended to vest any present property, is clearly shown by the further stipulations that the amounts are to be applied on account, and that if the machine should prove a failure, or not meet with appellant's approval, appellee was to construct another which would meet with his approval. The fact that appellant, on being shown a machine, and the drawings thereof, expressed himself satisfied therewith, and offered to accept the same, only shows that appellant was then willing to accept what appellee had done, as a compliance with his part of the contract. But the machine was not yet entirely

30—119 ILL.

perfected, and there was no delivery,—no acting upon the offer of appellant,—and so no property passed.

In contracts of sale, the rule is, "where, by the agreement, the vendor is to do anything to the goods, for the purpose of putting them into that state in which the purchaser is to be bound to accept them, or, as is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property." Benjamin on Sales, (1st Am. ed.) 221; Blackburn on Sales, (Am. ed.) 60, *151.

Since no property passed in the machines, it is impossible that any property could have passed in drawings, specifications and explanations, which are but incidents to the machine, and the cases cited in appellant's brief are therefore not analogous. Appellant has nothing but an executory contract, which, unfortunately for him, is of that peculiar character whereof specific performance can not be enforced by a decree in equity.

We are, moreover, of opinion, that relief was properly denied on the further ground that it affirmatively appears that appellee has placed it beyond his power to specifically perform his contract by sales and assignments to other parties, who, it is not alleged, are purchasers with notice, and who are not brought before the court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Chief Justice Scott, dissenting.