LESTER SOLA, Plaintiff-Appellee, *v.* PATRICK H. CLIFFORD *et al.*, Defendants-Appellants.

(No. 73-346;

Second District (2nd Division)—June 10, 1975.

Craig Larson, of Bloomingdale, for appellants.

Selwynn Coleman, of Roselle, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Du Page County, Illinois, entered in administrative review proceedings, which reversed a decision of the Board of Fire and Police Commissioners of the village of Roselle, Illinois, which after a lengthy hearing had found Police Officer Lester Sola guilty of a number of charges made against him and had ordered his discharge from his position as Lieutenant and as a member of the Roselle police department.

On October 1, 1971, an order was given by Robert Greve, Roselle Chief of Police, requiring all officers in squad cars on the midnight-to-eight shift to give their location approximately every 15 minutes, unless they were in the police station or at lunch, or otherwise on an assignment. The stated purpose was to assist Chief Greve in preparing statistics on patrol patterns and areas covered. Lieutenant Sola was at that time assigned to patrol duty on the midnight-to-eight shift. Chief Greve testified, at the hearing before the Board, that on October 8, 1971, watching from an unmarked car, he saw Lieutenant Sola arrive at the police station at 6 A.M. and leave at 6:45 A.M. He later checked the police radio log and found entries stating that Lieutenant Sola had arrived at the station at 6:15, rather than 6, and had left at 6:40, not 6:45.

On October 12, 1971, according to the testimony subsequently given by Chief Greve at the hearing, he watched Lieutenant Sola arrive at the police station at 3:29 A.M., saw him leave at 5:01 A.M., heard no radio communications between these times, and later found entries in the police radio log stating that at 3:45 A.M., 4:02 A.M., 4:32 A.M., and 4:45 A.M., Lieutenant Sola was at various locations in the village of Roselle other than inside the station. Similarly on October 14, 1971, according to the testimony, Chief Greve and another policeman saw Lieutenant Sola arrive at the station at 3:41 A.M. and leave at 4:45 A.M.; they heard no radio transmissions from Lieutenant Sola's squad car, nor did the Bloomingdale police department operator, who was assisting in the monitoring; and the Roselle police radio log afterwards showed receipt of five radio transmissions from Lieutenant Sola, three of them at times when he was in the station.

In the complaint Chief Greve subsequently filed with the Board, he charged that Lieutenant Sola had instructed the Roselle police depart-

ment radio operator on duty on October 8 to make two false entries in the police radio log. At the hearing before the Board, no evidence was offered to show that Lieutenant Sola gave any such instructions or had any knowledge of the operator's making inaccurate entries on that date. The Board found, however, that Lieutenant Sola had instructed the radio operator to falsify an official police record by reporting his arrival at the station as having occurred at 6:15, and his return to patrol duty as having taken place at 6:40, instead of the times noted by Chief Greve.

In his complaint Chief Greve alleged, further, that Lieutenant Sola had instructed the radio operator on duty on October 12 and 14 to make four false entries on October 12 and five on October 14. The radio operator who was on duty on those dates, Mary O'Keeffe, testified that Lieutenant Sola was helping her with a real estate problem, and there was the order for a 15-minute periodical location check for the cars, so she made the false entries pursuant to an agreement with Lieutenant Sola which was "unspoken, understood." In his testimony Lieutenant Sola denied that he had falsified any records, had instructed that any false entries be made, had had any agreement with Mary O'Keeffe regarding the reporting of false locations, or had known Mary O'Keeffe had reported any false locations until after he was charged. The Board found that four false entries had been made on October 12 with the knowledge and consent of Lieutenant Sola as shift commander. It found that five false entries had been made on October 14 with the knowledge and consent of Lieutenant Sola who was then the shift commander.

On October 21 Chief Greve assigned two policemen, equipped with a two-way radio, binoculars, and a camera, to keep Lieutenant Sola under surveillance. The two policemen heard Lieutenant Sola report his position, while he was parked in a railroad station parking lot, as being at an intersection which was about 300 yards from his car. Then as he was leaving the parking lot they heard him give his location as at an intersection about a quarter of a mile ahead of his car. Later they heard him give two location reports while parked at a Photo-mat, indicating that he was at places which were some distance away, one of those places being between 600 and 800 feet from the Photo-mat. Just after he left his position at the Photo-mat they heard him report his location as being at the Roselle State Bank, when he was still half a mile from the bank.

On October 28 the two policemen continued their surveillance. Again Lieutenant Sola's car was seen at the Photo-mat, and during the time he was parked there they heard him transmit three reports that he was in other locations. One of those locations was just across the street, but one was 600 to 800 feet away.

The testimony showed that both the train parking lot and the Photomat were good vantage points from which to watch many of the businesses in the area. The directive of Chief Greve did not indicate whether a car situated in such a position had to broadcast his exact position, or whether giving an approximate location would be sufficient. One of the policemen who had been on the surveillance assignment testified: "The midnight to eight shift can be a rather dangerous shift. When I was on duty I reported my exact location. As I reported the location, I would get out of it. I felt that reporting my location over the radio might be a rather dangerous and stupid thing to do." Lieutenant Sola testified that there was no intent on his part to falsify his location. With regard to the difficulty in reporting an exact location from a moving car, he testified that he could travel substantial distances in a very few seconds, and sometimes was unable to communicate immediately with the radio operator by reason of interference or faulty wiring. The Board found that all of the location reports described which were given by Lieutenant Sola on October 21 and October 28 were false radio transmissions.

After the Board had found him guilty of the various charges made against him and had ordered his discharge, Lieutenant Sola filed a complaint for administrative review in the Circuit Court of Du Page County. The circuit court found that the Board's findings were not sustained by the evidence contained in the record of the proceedings before the Board and were against the manifest weight of the evidence, and reversed the decision of the Board. It ordered Lester Sola reinstated as a lieutenant in the Roselle police department, with full pay, and awarded him all back pay, allowances, vacation pay, and other benefits he would otherwise have received. This appeal by the Board followed.

■■ In our review we must consider whether the Board's findings of fact are against the manifest weight of the evidence. (*Basketfield v. Police Board,* 56 Ill.2d 351, 358.) We must also consider whether the Board's decision to discharge is supported by proof of "some substantial shortcoming which renders the continuance of the officer in his office detrimental to the discipline or efficiency of the service." (*Fantozzi v. Board of Fire & Police Commissioners,* 27 Ill.2d 357, 361.) If it appears that the findings are not supported by substantial evidence (*Christenson v. Board of Fire & Police Commissioners,* 11 Ill.App.3d 487, 492), or that sufficient cause for removal is not shown (*Gasparas v. Leack,* 93 Ill.App. 2d 99, 111—13), the decision of the Board must be set aside.

■■ We believe it is clear that Lieutenant Sola should not have been found guilty of committing any offense on October 8, 1971, because of the complete absence of any evidence of his giving instructions to the radio operator to make false entries in the log or having any knowledge

of false entries. We believe, also, that he should not have been found guilty of the charges made with respect to October 12 and 14, there being no evidence whatsoever that he gave any instructions to the radio operator, nor any satisfactory evidence that he knew false entries were being made on those dates. Mary O'Keeffe's testimony that there was an agreement which was "unspoken, implied," does not explain how Lieutenant Sola became a guilty party to an improper agreement without saying anything. There is no evidence that he observed her as she made the false entries, or saw what she had done. The evidence does not establish why he might have been expected to take any interest in what she was entering in the radio log, since Chief Greve testified that he himself was responsble for seeing that the entries were correct, and there was no requirement that an officer give location reports while in the station. We agree with the trial court that the Board's findings of fact with respect to the October 8, 12, and 14 charges are not supported by the evidence and are against the manifest weight of the evidence.

■■ We believe, also, that Lieutenant Sola should not have been found guilty of making "false radio transmissions" on October 21 and 28, when giving approximate locations appeared for various reasons to be the sensible thing to do and he was not advised or warned to do otherwise. His failure to report exact locations would appear not to be disobedience of an order but misunderstanding of an order. His reporting approximate locations on those two dates should not, in our opinion, have been treated by the Board as representing any kind of substantial shortcoming which would require or justify his removal from the police force.

■■ It appears that the trial court erred, however, in awarding back pay and other benefits, there being no testimony in the transcript of the proceedings before the Board relating to the amounts and kinds of benefits claimed. A court cannot go outside of the record certified to it, under section 11 of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 274), and therefore a court ordering reinstatement to office in administrative review proceedings cannot enter a judgment for back wages without support in the record. (*Drezner v. Civil Service Com.,* 398 Ill. 219, 232; *Brewton v. Civil Service Com.,* 115 Ill.App.2d 460, 466.) It can, however, under section 12 of the Act (Ill. Rev. Stat. 1973, ch. 110, par. 275), remand the case to the administrative agency for the taking of additional evidence relating to back pay and related benefits. (*Drezner v. Civil Service Com.,* 398 Ill. 219, 232; *Sgro v. City of Springfield,* 6 Ill.App.3d 478, 481-82.) Remandment to the Board in this case would allow opportunity for the introduction of evidence in mitigation of damages as agreed orally before this court.

For the reasons stated, the judgment of the trial court is affirmed in-

238

sofar as it finds the charges against Lieutenant Sola to be not supported by the evidence and reinstates him to office, but is reversed insofar as it awards back pay and other benefits, and the case is remanded with directions that the trial court remand the case to the Board for the taking of additional testimony as to back salary and other benefits and set-offs therefrom.

Affirmed in part and reversed in part, and remanded with directions.

RECHENMACHER, P. J., and T. MORAN, J., concur.