ANTHONY ZANNIS, Plaintiff-Appellant, *v.* LAKE SHORE RADIOLOGISTS, LTD., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 78-996

Opinion filed June 18, 1979.

John D. Kightlinger, of Arlington Heights, and Anna P. Kioutas, of Chicago, for appellant.

Coffield, Ungaretti, Harris & Slavin, of Chicago (Michael W. Coffield and Gregory A. Friedman, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Anthony Zannis, is a doctor who was employed as a radiologist under a written contract with defendant, Lake Shore Radiologists, Ltd., a professional medical corporation. Plaintiff's contract required him to perform such duties as were assigned to him in his medical specialty, in return for which he was to receive an annual salary and a cash bonus paid out of the corporation's receipts. Three of the individual defendants, Borgerson, Lee and Kim, were employed by defendant corporation under contracts substantially similar to that of plaintiff. Defendant Garcia was also employed as a radiologist by defendant corporation. In addition, plaintiff and defendants Borgerson, Lee and Kim were the officers, directors and sole shareholders of defendant corporation. On December 8, 1975, defendant corporation's shareholders, including plaintiff and defendants Borgerson, Lee and Kim, voted three to one to terminate plaintiff's employment contract. Plaintiff subsequently filed a three-count complaint for equitable and other relief, based on an alleged wrongful termination of his contract. In count one, plaintiff stated his contract had been wrongfully terminated by the individual defendants so they could receive a greater share of the corporation's receipts. Plaintiff sought equitable relief in count one, including (1) reinstatement to his position as a practicing radiologist with defendant corporation, (2) an injunction which, upon his reinstatement, would forbid the individual defendants from harassing him in such a way as to force him to resign, (3) payment of the salary, bonus and any other benefits provided for in his contract and not received after termination through imposition of a constructive trust on corporate funds. In counts two and three, plaintiff incorporated the allegations of count one and asked, respectively, for damages for breach of contract and damages based on tortious interference with his contract. Defendants moved to dismiss plaintiff's complaint for failure to state a cause of action in chancery. The trial court dismissed plaintiff's equitable cause of action in count one for failure to state a claim upon which equitable relief could be granted, and transferred plaintiff's other claims to the law division of the circuit court, where they are now pending. Plaintiff appeals from the dismissal of his equitable cause of action.

The sole issue before this court is whether plaintiff's complaint stated a cause of action for equitable relief.

The procedure which defendants assert they followed in terminating plaintiff's employment was set forth in paragraph 2 of his contract:

"Subject to the provisions of paragraph 9 hereof, the term of this Agreement shall continue until December 31, 1970 and on a year to year basis thereafter; provided however, that Corporation may

terminate this Agreement by the approval of at least three-fourths (¾) of its shareholders so long as notice of such termination is given at least ninety (90) days prior to the date of termination."

Plaintiff's contract further provided that in the event of termination under paragraph 2, plaintiff was to receive certain compensation. Defendants also assert they have tendered this compensation, but that plaintiff has rejected all payments.

Plaintiff maintains that section 44 of the Business Corporation Act (Ill. Rev. Stat. 1975, ch. 32, par. 157.44), as well as a bylaw of defendant corporation, allowed defendant corporation's board of directors to terminate his employment only if in their judgment such action was in the best interest of the corporation. Plaintiff urges that the reason he alleged for his termination (the individual defendants wanted a greater share of the corporate receipts) had no relation to whether his termination was in the best interest of defendant corporation and that regardless of whether defendants followed the procedure for termination in paragraph 2 of his contract, he nevertheless stated a cause of action in equity for a conspiracy to breach his contract and for breach of contract based on a violation of both section 44 of the Business Corporation Act and a bylaw of defendant corporation. Plaintiff further argues that the individual defendants were majority shareholders and he was a minority shareholder in defendant corporation, and that as a result the individual defendants owed him a fiduciary duty. Thus, his allegation that defendants terminated his contract to receive more of the corporation's receipts also stated a cause of action in equity for breach of a fiduciary duty. The principal equitable relief sought by plaintiff was an order for specific performance, reinstating him to his position as a practicing radiologist with defendant corporation, and an injunction which, upon his reinstatement, would prevent the individual defendants from harassing him into resigning.

■■ We disagree with plaintiff's contention that his complaint stated a cause of action for equitable relief. Plaintiff's contract with defendant Lake Shore Radiologists, Ltd., was a personal service contract. It is well settled that, with reference to such contracts, when specific performance is sought, a court should not compel an employee to work for his employer, nor compel an employer to retain an employee in his service. (*Cowen v. McNealy* (1950), 342 Ill. App. 179, 96 N.E.2d 100; *Reid Ice Cream Co. v. Stephens* (1895), 62 Ill. App. 334; *Kennicott v. Leavitt* (1890), 37 Ill. App. 435.) The reasons are readily apparent.

When a contract calls for services over a period of time, especially when such services require special skill, knowledge, judgment or discretion, it would be impractical, if not impossible, for a court to provide the continuous supervision necessary to enforce this kind of order for specific performance. (Elliott, *Specific Performance*, 1960 U. Ill. L.F.

72, 86.) In addition, personal service contracts often require a relationship of cooperation and trust between the parties to the contract. Consequently, as a matter of public policy courts will avoid the friction that would be caused by compelling an employee to work, or an employer to hire or retain someone against their wishes. Elliott, *Specific Performance*, 1960 U. Ill. L.F. 72, 86.

■■ Both reasons are applicable here. Plaintiff's work as a radiologist obviously required certain skill, knowledge and discretion, which would make it difficult or impossible to supervise a specific performance order compelling his reinstatement. In addition, plaintiff in an earlier verified complaint filed in this same case stated that he and the individual defendants worked closely in performing their duties as partners prior to incorporation. Furthermore, plaintiff stated in his present verified complaint that plaintiff and defendant doctors only incorporated for tax benefits and that incorporation did not change the conduct of their practice. Those are binding judicial admissions (*Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749) and indicate it would have been inappropriate to reinstate plaintiff because of the need for a cooperative working relationship among defendant corporation's employees.

Plaintiff argues that paragraph 14 of his contract expressly provides for specific performance and that this should render inapplicable the general rule against compelling an employer to retain an employee in his service. That paragraph reads:

> "The relationship of Doctor and the Corporation being of a special and unique nature, it is expressly agreed that this Agreement shall be enforceable in equity by specific performance."

■ We cannot accept plaintiff's argument. As stated, there are strong policy reasons for the rule against compelling an employer to retain an employee against his wishes. Furthermore, these reasons indicate the rule is designed not only for the benefit of the parties to a personal services contract, but also for the sake of both efficient judicial administration and society in general. Consequently, the mere fact that the parties to a personal services contract may have agreed therein to specific performance as a remedy cannot alter the necessity for imposing the general rule against compelling an employer to retain an employee. An analogy may be drawn between the present situation and one where a court is asked to order specific performance of a contract calling for an illegal act. In that circumstance, the mere fact that the parties agreed to specific performance will not justify ordering specific performance, because of the strong policy against sanctioning such an act.

Nor do we believe it was the intent of the parties that paragraph 14 be incorporated in the contract for the purpose of requiring a court to order

the specific performance here sought. If that were its purpose, then paragraph 2 providing for termination of the agreement would be rendered meaningless.

■ It is a well-established principle in the law of contracts that a construction should be adopted "which harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other." (*Coney v. Rockford Life Insurance Co.* (1966), 67 Ill. App. 2d 395, 399, 214 N.E.2d 1, 3.) Moreover, plaintiff introduced no evidence to support his interpretation of paragraph 14. The meaning of that paragraph, therefore, is a question of law (*Rymer v. Kendall College* (1978), 64 Ill. App. 3d 355, 380 N.E.2d 1089), to be determined in considering whether plaintiff's complaint stated a cause of action for equitable relief.

■ We conclude that the reference in paragraph 14 to specific performance was related to specific performance of the covenant by plaintiff in paragraph 3 (b) "[n]ot to engage in, or work for any individual, firm or corporation engaged in, the same or similar activities now or hereafter carried on by the Corporation, during the term of this Agreement without the consent of the Board of Directors of the Corporation." This interpretation of paragraph 14 harmonizes it with paragraph 2, dealing with termination. Moreover, the language in paragraph 14 that "[t]he relationship of Doctor and the Corporation [is] of a special and unique nature * * *" makes it clear that paragraph 14 was concerned with the enforcement of the covenant not to compete, for the reason that one consideration given by courts in upholding the enforceability of a covenant not to compete is the fact that it deals with an occupation of a special and unique nature. (42 Am. Jur. 2d *Injunctions* §109 (1969).) We conclude that paragraph 14 was not intended to compel defendant corporation to retain plaintiff as an employee.

The trial court properly dismissed plaintiff's complaint so far as it sought equitable relief. Plaintiff's other claims for payment of salary, bonus and any other benefit provided for in his contract were claims for damages, a remedy which can adequately be provided at law.

The order of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.