LINDA KURLE, Plaintiff-Appellee, *v.* EVANGELICAL HOSPITAL ASSOCIATION, d/b/a Good Samaritan Hospital, Defendant-Appellant. (ARGONAUT INSURANCE COMPANY, Defendant.)

Second District    No. 80-486

Opinion filed September 29, 1980.

46

Harry L. Kinser, Kenneth C. Robbins, and Jeffrey W. Maysent, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Wheaton, William J. Burdett, Corporation Counsel, of Oak Brook, and Dolores V. Horan, of Byrne & Schrenk, of Chicago, for appellant.

Oliver W. Gregory, William J. Holloway, and William R. Kucera, all of Botti, Marinaccio & Wilkinson, of Wheaton, and Leon M. Despres and Thomas H. Geoghegan, both of Chicago, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Defendant hospital takes this interlocutory appeal from an order of the trial court granting the motion of the plaintiff for a preliminary injunction and ordering that plaintiff's employment be reinstated by the defendant hospital including back pay and benefits which she enjoyed prior to her suspension on May 28, 1980.

Plaintiff was discharged from her employment as a nurse by the defendant hospital on June 13, 1980. Thereafter, plaintiff filed a four-count complaint and a petition for preliminary injunction. In count I, she sought both a preliminary and permanent injunction restraining and enjoining the defendant and its agents, servants and employees from preventing her from entering defendant's premises known as the Good Samaritan Hospital or from interfering with her work and practice there as a nurse, her pay, past and future, and all other employee benefits she enjoyed. Counts II, III and IV sought money damages, both compensatory and punitive, for injuries to her present and future ability to support herself and practice her profession as a nurse and for damages to her reputation as a competent nurse.

Defendant hospital filed its motion to dismiss count I on the grounds that the count failed to state a cause of action for legal or equitable relief; that the court had no power to order a private employer to reinstate plaintiff as a nurse; and that the plaintiff had not pleaded the prerequisites for preliminary mandatory injunctive relief.

■■ The motion to dismiss count I of the complaint and the petition for a preliminary injunction were heard and in effect denied by the trial court. The court then ascertained that defendant desired to stand on its motion to dismiss and did not intend to file an answer to the allegations of count I or to the petition. The judge then stated that he was ordering defendant hospital to reinstate the plaintiff with back pay, but then proceeded to hold an evidentiary hearing. Such an evidentiary hearing under these circumstances was improper, since it is the law in this State, that, on a motion for a temporary injunction, where the defendant has not answered the complaint and where issues have not been joined, the court should not receive or consider evidence or affidavits. (*H.K.H. Development Corp. v. Metropolitan Sanitary District* (1964), 47 Ill. App. 2d 46, 50, and cases cited therein.) However, since defendant participated in the hearing, defendant has waived any objection it might have had to the hearing, and the court could properly consider the evidence adduced in deciding whether to grant the preliminary injunction. See *Filter Dynamics International, Inc. v. Astron Battery, Inc.* (1974), 19 Ill. App. 3d 299, 317.

At the conclusion of the hearing, the court entered its order which contained the single finding that plaintiff was not afforded a hearing as set forth in section 15.1 of the Illinois Nursing Act (Ill. Rev. Stat. 1979, ch. 111, par. 3421) (hereinafter the Act) as well as in defendant hospital's employees' handbook. The court ordered that defendant hospital reinstate plaintiff's employment, including the back pay and benefits provided to her prior to her suspension.

Count I of the complaint purports to allege a cause of action for injunctive relief arising basically from: (1) the defendant's violation of its own rules regarding suspension and termination of its employees as set forth in its employees' handbook and (2) failure to comply with the requirements of section 15.1 of the Illinois Nursing Act (Ill. Rev. Stat. 1979, ch. 111, par. 3421) in taking disciplinary action against plaintiff. We first consider the application of section 15.1 of the Illinois Nursing Act.

Section 15.1 provides as follows:

"No action of a disciplinary nature which is predicated on charges alleging unethical or unprofessional conduct of a person who is a registered professional nurse or a licensed practical nurse and which can be reasonably expected to affect adversely that person's maintenance of his present, or his securing of future, employment as such a nurse may be taken by the Department, by any association or

by any person unless the person against whom such charges are made is afforded the right to be represented by legal counsel of his choosing and to present any witness, whether an attorney or otherwise to testify on matters relevant to such charges." (Ill. Rev. Stat. 1979, ch. 111, par. 3421.)

Plaintiff contends that the legislature, in enacting this section, intended that it apply to any person or association as well as the Department of Registration and Education. She argues that the statute prevents any association or person from taking any disciplinary action, predicated on charges alleging unethical or unprofessional conduct of a registered professional or licensed practical nurse, that could reasonably be expected to adversely affect the nurse's securing of employment, unless the nurse is afforded the right to be represented by legal counsel of his choosing and to present any witness, whether an attorney or otherwise, to testify in matters relevant to such charges. Under the plaintiff's interpretation of this section, its provisions are applicable to actions by employers, both public and private, in suspending, discharging or otherwise disciplining an employee where the charge is based on unethical or unprofessional conduct. The defendant contends, to the contrary, that section 15.1, like every other section of the Illinois Nursing Act, was intended to apply only to actions by the Illinois Department of Registration and Education (hereinafter Department) concerning the licensure of nurses.

■■ We have carefully considered section 15.1 of the Illinois Nursing Act and the other provisions of that Act. As with any statute, it is our responsibility to ascertain legislative intent. If such intent is manifest from the clear and unambiguous language of the statute, there is obviously no need for construction; however, if the intent is in any way clouded or uncertain, the established rules of construction applicable to statutes may be followed to ascertain the true meaning of the statute. (See *Stewart v. Amoco Oil Co.* (1979), 72 Ill. App. 3d 330, 333.) It is also a cardinal rule of statutory construction that the intent and meaning of a statute are to be determined from the entire statute. (*Neville v. Friedman* (1977), 67 Ill. 2d 488, 492, *cert. denied* (1978), 437 U.S. 903, 57 L. Ed. 2d 1132, 98 S. Ct. 3088; *Huckaba v. Cox* (1958), 14 Ill. 2d 126, 131.) In arriving at the purpose and meaning of the statute at issue, we look at the entire act, considering all its separate parts together as a whole. See *Stroh v. Blackhawk Holding Corp.* (1971), 48 Ill. 2d 471, 479; *Scribner v. Sachs* (1960), 18 Ill. 2d 400, 406; *Illinois Bell Telephone Co. v. Ames* (1936), 364 Ill. 362, 366; *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 253.

Plaintiff contends that section 15.1 is unambiguous and that the legislature clearly intended, by use of the phrase, "may be taken by the department or by any association or by any person," that the requirements of the section apply to disciplinary actions taken by any association or any person

against nurses charged with unethical or unprofessional conduct as well as to disciplinary actions taken by the Department. "Person," plaintiff contends, obviously includes employers in the private sector such as the defendant hospital.

An initial reading of the Act, confined solely to a consideration of the provision at issue, gives credence to plaintiff's contentions; but, a reading of section 15.1, in the context of the entire Act (Ill. Rev. Stat. 1979, ch. 111, par. 3401 *et seq.*) and the companion licensing acts, makes evident that it was the intent of the Illinois legislature, in enacting the Illinois Nursing Act, to create a licensing scheme for nurses, including disciplinary procedures to be utilized by the Department when charges of unethical conduct have been brought against licensed nurses; there was no intent that the Act embrace disciplinary procedures to be followed by employers with reference to nurse employees. It is our duty to interpret a statute as to promote its essential purposes. See *Craig v. Peterson* (1968), 39 Ill. 2d 191, 201. Accord, *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363, quoting *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Commission* (1969), 42 Ill. 2d 385, 389-90.

A review of the legislative history of the Act strengthens our interpretation. The Illinois Nursing Act was enacted by the legislature in 1951, with subsequent revisions in 1965. Prior to the amendments of 1965, section 15 (Ill. Rev. Stat. 1963, ch. 91, par. 35.46 (amended 1965) (current version at Ill. Rev. Stat. 1979, ch. 111, par. 3420)), relating to the discipline of licensed nurses by the Department, set forth the grounds upon which the Department could refuse to issue or renew, or could suspend or revoke, any certificate of registration of a registered nurse or a licensed practical nurse. Under that section, licensed nurses could be disciplined in only one of two ways: by suspension or by revocation of his or her certificate. In either case, however, pursuant to section 16 of the Act (Ill. Rev. Stat. 1963, ch. 91, par. 35.47 (currently at Ill. Rev. Stat. 1979, ch. 111, par. 3422)), a nurse was afforded procedural rights under sections 60-b through 60-h of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1963, ch. 127, pars. 60b through 60h).

In 1965, section 15 of the Illinois Nursing Act was amended and the Department's power to discipline was expanded to include the authority to "otherwise discipline a holder of a certificate * * *" (Ill. Rev. Stat. 1965, ch. 91, par. 35.46 (presently at Ill. Rev. Stat. 1979, ch. 111, par. 3420)). Thus, the amendment permitted the Department to impose a punishment less severe than revocation or suspension of licenses. But the procedural safeguards of the Civil Administrative Code, which were required under section 16 of the Act, remained applicable only to actions taken by the Department which resulted in a suspension or revocation of a nurse's license.

(Ill. Rev. Stat. 1965, ch. 91, par. 35.47 (now at Ill. Rev. Stat. 1979, ch. 111, par. 3422).) This necessitated the enactment of section 15.1 (Ill. Rev. Stat. 1965, ch. 91, par. 35.46—1 (currently at Ill. Rev. Stat. 1979, ch. 111, par. 3421)), the center of controversy in the instant case. Where charges are brought which seek disciplinary action, other than revocation or suspension of a nurse's license, section 15.1 affords a nurse against whom such charges are brought the right to be represented by an attorney of his or her choice and to present any witnesses on matters relevant to the charges. Without the enactment of section 15.1, a nurse subjected to such disciplinary action by the Department, under its new authority to "otherwise discipline a holder of a certificate," would be deprived of all procedural safeguards. It is reasonable to conclude that section 15.1 was adopted to fill the procedural void created by cases where the Department takes lesser disciplinary action, at least in those cases involving charges of unethical or unprofessional conduct.

There are other reasons that militate against plaintiff's position that the language of section 15.1 was intended to embrace disciplinary actions taken by employers. Administrative decisions made by the Department, including disciplinary actions against nurses, are subject to judicial review under section 17 of the Act. (Ill. Rev. Stat. 1979, ch. 111, par. 3424 (formerly at Ill. Rev. Stat. 1963, ch. 91, par. 35.48).) But section 17 contains no provision for review of quasi-hearings or disciplinary actions outside the auspices of the Department. The Act is devoid of any remedies, penalties, rules or procedures for employment decisions made or disciplinary actions taken by employers. It is inconceivable that the legislature intended that section 15.1 afford procedural protection to nurses subjected to disciplinary action taken by their employers, including suspension or discharge, but provided no implicit or explicit remedies, procedures, rules, or methods for review of such actions.

Further, the Illinois Nursing Act and its 1965 amendment, section 15.1, were both enacted by the legislature while the Illinois Constitution of 1870 was still in effect. Article IV, section 13, of the 1870 Constitution provided in pertinent part:

"No Act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." (Ill. Const. 1870, art. 4, §13.)

The formal title of the Illinois Nursing Act is "An Act in relation to the regulation of the practice of nursing ° ° °." As such, it deals with the regulation of a profession and not with the employment relationship between members of the regulated profession and their employers. To interpret the statute as plaintiff suggests would require us to hold that the legislature had passed an act embracing more than one subject in derogation of the foregoing constitutional prohibition. "A statute should be interpreted so as to avoid a construction which would raise doubts as to its

validity." *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363.

■■ We also note that, at the time section 15.1 was enacted, section 60—c of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1965, ch. 127, par. 60c) provided, in substance, that the Department, on its own motion or upon the verified written complaint of any person, shall investigate the actions of any person holding or claiming to hold a nursing certificate. With that in mind, the disputed language of section 15.1 may be interpreted to signify a legislative intent that, in addition to disciplinary actions of the Department predicated on its own charges, section 15.1 includes disciplinary actions of the Department taken as a result of charges initiated by any association or person as contemplated under section 60—c of the Administrative Code of Illinois. We recognize that this construction is somewhat strained and that the language in section 15.1 is not as clear as it could be; but, our conclusion, nevertheless, remains unaltered: We hold that the provisions of the Illinois Nursing Act, and in particular section 15.1, were not intended to embrace the suspension, discharge or discipline of nurse employees by their employers.

■■ The trial court erred in finding that the defendant hospital violated the provisions of section 15.1 of the Illinois Nursing Act. Ill. Rev. Stat. 1979, ch. 111, par. 3421.

■■ The trial court also found, as another basis for granting the preliminary injunction, that plaintiff was not afforded a hearing as set forth in defendant's employees' handbook. While plaintiff, in this court, contends that the employees' handbook constituted a part of the employment contract between plaintiff and defendant, and asserts that the court found that defendant had breached the employment contract, an examination of count I of the complaint discloses that plaintiff did not in any way allege that the provisions of the employees' handbook constituted a part of the employment contract. Moreover, the record does not support plaintiff's contention that the trial court found that defendant hospital breached the employment contract. Regarding this issue, count I of plaintiff's complaint simply asserts the existence of the employees' handbook and the provision thereof, and alleges that the plaintiff's rights were violated by the failure of defendant to follow them. Similarly, the trial court found merely that defendant had failed to afford plaintiff a hearing required by the employees' handbook. The record contains no support for the contention that the trial judge, as one basis for awarding the preliminary injunction, found that defendant breached plaintiff's employment contract. Plaintiff concedes, in her brief, that, absent contractual or statutory provisions, an employer may discharge an employee without cause. *Pleasure Driveway & Park District v. Jones* (1977), 51 Ill. App. 3d 182, 190.

■■ ■ Having found that the provisions of section 15.1 of the Illinois

Nursing Act are not applicable to this employment situation, and having found that the allegations of count I did not assert a cause of action for breach of contract, we conclude that the trial court should have granted defendant's motion to dismiss count I of the complaint and should have denied the petition for a preliminary injunction.

Even if plaintiff had sufficiently alleged a cause of action for breach of her employment contract, we find that the trial court in this case still erred in granting the motion for preliminary injunction. The requirements for the issuance of a preliminary injunction are well established. (*Crest Builders, Inc. v. Willow Falls Improvement Association* (1979), 74 Ill. App. 3d 420, 422. See *Bromberg v. Whitler* (1977), 57 Ill. App. 3d 152, 155.) One of the requirements is that plaintiff must have no adequate remedy at law for her injuries or damages. This requirement lends support to our conclusion that the trial judge erred in issuing a preliminary injunction. Plaintiff sought a preliminary injunction restraining and enjoining defendant from preventing her entering defendant's premises or from interfering with her work on its premises as a nurse, with pay and other benefits. But the trial court's order does not so enjoin or restrain defendant from preventing plaintiff from entering the premises of defendant hospital or resuming her work. The trial court's order required that plaintiff's employment be reinstated, and that she be granted the back pay and benefits she enjoyed prior to her May 28, 1980, suspension. The comments of the trial judge in the record make clear that, by his order, he intended that plaintiff be reinstated for the single purpose of receiving back pay and benefits. Such relief is purely economic for which plaintiff has an adequate remedy at law; such limited reinstatement, as ordered by the trial court, provides no protection for plaintiff's good name and reputation, but provides her only monetary relief. (See *Bromberg v. Whitler* (1977), 57 Ill. App. 3d 152, 156.) The presence of an adequate remedy at law is an additional basis for our finding that the trial court erred in granting the preliminary injunction.

■■ There is yet another reason why the trial court should have granted the motion to dismiss count I of the complaint and should have denied injunctive relief. Count I of the complaint seeks only the equitable remedy of injunctive relief, both temporary and permanent. It seeks to have the court order defendant employer to continue to employ the plaintiff. At common law it was recognized that a person cannot, by decree of court, be compelled to retain another in his service. (*Reid Ice Cream Co. v. Stephens* (1896), 62 Ill. App. 334, 339.) The policy underlying this principle arose from the reluctance of courts to interfere with and enforce any type of personal relationship. *Wollensak v. Briggs* (1887), 119 Ill. 453; *Cowen v. McNealy* (1950), 342 Ill. App. 179; *Rabinovich v. Reith* (1905), 120 Ill. App. 409.

This rule of law has recently been applied with continued vigor. In

*Zannis v. Lake Shore Radiologists, Ltd.* (1979), 73 Ill. App. 3d 901, plaintiff doctor brought an action for wrongful termination of his employment contract with defendant. He prayed for reinstatement, back pay and benefits. (73 Ill. App. 3d 901, 903.) The sole issue on appeal was whether plaintiff's complaint stated a cause of action for equitable relief. The Appellate Court for the First District found that plaintiff was not entitled to equitable relief, stating:

"Plaintiff's contract with defendant * * * was a personal service contract. It is well settled that, with reference to such contracts, * * * a court should not compel an employee to work for his employer, nor compel an employer to retain an employee in his service. [Citations.]" (73 Ill. App. 3d 901, 904.)

The court reasoned that it would be impractical, if not impossible, for a court to provide the continuous supervision necessary to enforce a personal service contract, especially where such services require special skill, knowledge, judgment or discretion. (73 Ill. App. 3d 901, 904.) As further support for its finding, the court stated that, since personal service contracts often require a relationship of cooperation and trust between the parties, as a matter of public policy, courts avoid the friction that would develop by compelling an employee to work, or an employer to hire or to retain someone against his wishes. 73 Ill. App. 3d 901, 905.

■■ An examination of the cases cited by plaintiff in support of her contention that, today, Illinois courts have the equitable power to reinstate an employee who has been wrongfully discharged, reveals that they are distinguishable from the present case. *People ex rel. Jaworski v. Jenkins* (1978), 56 Ill. App. 3d 1028, *Sola v. Clifford* (1975), 29 Ill. App. 3d 233, and *Corbett v. City of Chicago* (1944), 323 Ill. App. 429, all involved actions by public bodies or public officials in wrongfully discharging public employees. The authority of a court to order public bodies or public officials to carry out their public or statutory duty is no support for the contention that a private employer can be compelled to do so.

■■ We recognize, however, that there are certain areas of the law where a legislature has required reinstatement of an employee by a private employer, *e.g.*, when an employee is discriminated against because of race, color, creed or sex. (See, *e.g.*, Equal Employment Opportunity Act of 1972, 42 U.S.C. §2000e—5(g)(1976).) But absent the presence of a duty imposed by statute, we find no authority enabling us to depart from the policy expressed by Justice Harlan many years ago in *Arthur v. Oakes* (7th Cir. 1894), 63 F. 310, 318:

"The rule, we think, is without exception that equity will not compel the actual, affirmative performance by an employee of merely personal services, any more than it will compel an employer

to retain in his personal service one who, no matter for what cause, is not acceptable to him for service of that character."

Accordingly, we reverse and vacate the order of June 27, 1980, granting plaintiff's preliminary injunction and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

NASH, J., concurs.

Mr. PRESIDING JUSTICE SEIDENFELD, specially concurring:

Although I agree with the result reached in the court's opinion, I write separately because of my disagreements with some of its broad conclusions. The majority seems to state that a discharged employee always has an adequate remedy at law if money damages is the only relief sought. However, there may be situations where due to the circumstances of the discharge the employee cannot find other employment and would suffer severe deprivation if preliminary injunctive relief were not available. In *Sampson v. Murray* (1974), 415 U.S. 61, 92 n. 68, 39 L. Ed. 2d 166, 187 n. 68, 94 S. Ct. 937, 953 n. 68, the Supreme Court held open the possibility that in "extraordinary cases" irreparable injury might be found in discharge cases so as to warrant preliminary relief.

In *Hoffman v. Wilkins* (1971), 132 Ill. App. 2d 810, the court held that injury to reputation and loss of income occasioned by termination constituted irreparable injury and affirmed a preliminary injunction ordering reinstatement with back pay. Even though *Hoffman* was a public employment case, the question of adequacy of the legal remedy and existence of irreparable injury should not be answered differently in the private employment context where the discharged employee has a clear right to be protected.

The majority also implies that private employees never have a right to reinstatement except where antidiscrimination or other statutes impose duties on the employer. I would not foreclose the possibility that in appropriate circumstances an employee discharged in breach of an employment contract could be reinstated pending final determination on the merits. The common law rule that courts of equity will not enforce personal services contracts has encountered so many exceptions (public employment; discriminatory discharges based on race, sex, color, creed, or handicap; collective bargaining agreements), that to some extent the exceptions have swallowed the rule. The remedy of reinstatement must be granted with caution, but should not be barred solely because the underlying right is contractual rather than statutory.

56

In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, the supreme court recognized the tort of retaliatory discharge. The court was not faced with the question of whether the discharged employee could be reinstated pending the outcome of the litigation. In my opinion, the availability of that remedy in similar situations should not be automatically denied.

Because plaintiff has not stated a cause of action and due to the countervailing interest of defendant in the circumstances of this case, I concur in the result.